**In the Matter of Gertrude S. KOSTING.**
**No. 37140.**

United States District Court,
D. Connecticut.

Oct. 31, 1972.

Buddy O. H. Herring, Westport, Conn., for petitioner.

Harry M. Lessin, Norwalk, Conn., for respondent.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

This is a petition for review by Randolph Vidal, a real estate broker, of the referee's order denying a priority claim or charge on the assets of the bankruptcy estate for petitioner's commission on the sale of the bankrupt's house.

The referee found the following facts. On May 15, prior to bankruptcy, the bankrupt entered into an exclusive agency agreement with Daphne Bayles, a real estate broker, giving Bayles the exclusive right for ninety days to sell the bankrupt's real estate situated at 35 Long Lots Road, Westport, Connecticut, at a commission rate of 6% if sold either at a price of $56,000 or at a figure acceptable to the bankrupt. This selling listing was offered by Bayles to Vidal, another real estate broker, on a sharing basis, which meant that if Vidal accomplished a sale of the property he would be entitled to 70% of the commission and Bayles would receive 30%. Vidal's office produced William and Elizabeth McCusker as buyers for the property at a price of $52,500, and on July 24, 1971, the McCuskers signed an instrument entitled "Purchase Agreement" on which the bankrupt also signed her approval, which stated that there was received from them a "binder deposit" of $525.00 on the purchase of the property with a contract to be signed on or before August 3, 1971 and the closing to be held on or before August 20, 1971. The bank-

rupt did not execute a formal contract with respect to this sale, but on August 6, 1971 she filed a voluntary petition in bankruptcy which initiated the bankruptcy proceeding now under review. On October 6, 1971, the trustee in bankruptcy filed a petition reciting that the McCuskers desired to consummate a purchase of the real estate and requesting that he be authorized to sell it to them for $52,500. After a duly noticed hearing, the referee entered an order authorizing the trustee to sell the property for this price, and the sale was consummated.

The referee, in reviewing petitioner's claim, found as conclusions of law that Vidal became entitled to his commission under the exclusive agency agreement by July 24, 1971, when the binder agreement was executed, and that his commission was based solely on services rendered up to this date. This gave Vidal only a general claim against the bankruptcy estate: under state law his claim was not a secured one, nor under bankruptcy law was it a priority claim entitled to priority in payment over the claims of general creditors. Finally, the claim was not deemed an administrative expense—which would give it priority status—because (a) the services he performed to earn the commission were fully rendered to the bankrupt prior to bankruptcy and were not rendered after bankruptcy to the trustee in bankruptcy, and (b) the exclusive agency agreement under which he acted and earned a commission was fully executed on his part prior to bankruptcy and did not constitute an executory contract which could be claimed to be assumed by the trustee in bankruptcy and under which services in earning the commission could be claimed to be rendered to the trustee.

In seeking to set aside the referee's order, petitioner contends that the services rendered by him to the estate *after* the declaration of bankruptcy were not given significance by the referee. These services, which petitioner states included substantial efforts to maintain the McCuskers as ready buyers and to keep their mortgage commitment in force despite its expiration twice during the period between the signing of the binder and the closing were, petitioner argues, crucial to permitting the trustee to accomplish the closing and, under a number of theories, entitle petitioner's claim to his commission to receive priority status. At oral argument, the trustee admitted that Vidal performed some significant services to the estate in bankruptcy with regard to bringing about the closing, although the precise nature and scope of these services were not detailed. Assuming, *arguendo,* that such instrumental post-bankruptcy services were rendered, the issue here is whether such services entitle petitioner to have all or some portion of his commission treated as a priority claim.

Vidal's first ground for asserting that his commission should be paid as a priority claim is that the trustee assumed the contract made by the bankrupt with the petitioner through his continued dealings with petitioner's office regarding the sale of the bankrupt's house. The referee properly found, however, that Vidal's commission was fully earned when the binder agreement was executed. Whether or not a closing was ultimately consummated, Vidal's commission would still have been due him, and he was not required to maintain the McCuskers as ready buyers. *See* Finch v. Donella, 136 Conn. 621, 626, 73 A.2d 336 (1950). The petitioner presents no cases which suggest a contrary conclusion. Thus the contract was fully executed by Vidal before bankruptcy, and the subsequent services cannot, therefore, be deemed to have been rendered under it; the trustee, to the extent he may have accepted such services, cannot be said by this act to have assumed or adopted this contract.

Petitioner next contends that the services he rendered subsequent to the filing of the petition in bankruptcy—if not his

entire commission [1]—are entitled to priority status as an administrative expense. Normally, such services performed on behalf of the estate in bankruptcy by accountants, realtors, and the like are accorded such status. 3A Collier on Bankruptcy § 62.11. The trustee argues, however, that in the instant case no compensation can be paid Vidal because he failed, prior to rendering services to the estate, to obtain an order from the bankruptcy court authorizing them and establishing a rate of compensation for them as required by General Order 45, Bankruptcy Gen.Order 45, 28 U.S.C.[2] This, he contends, is an absolute bar both to the petitioner's claim for payment of the later services, as well as to any possible elevation of the status of petitioner's claim for his commission based on earlier services.

Whether General Order 45 absolutely bars claims for services rendered to trustees in bankruptcy by those who have failed to obtain prior court authorization of their services has not been established in the reported decisions of this District. Although a number of district court decisions in New York have relied upon the Order to deny claims, *see, e. g.,* In re Benjamin Kaufman Inc., 21 F.2d 799 (S.D.N.Y.1927); In re New York Investors, 48 F.Supp. 900 (E.D.N.Y. 1943), no decision of the Second Circuit precludes the exercise of discretion to allow claims despite the Order. Moreover, in In re Cohen, 64 F.2d 103 (2d Cir. 1933), that Court ruled, though without reference to General Order 45, that "the equitable principle of compensating one who has benefited the fund" in bankruptcy should be applied to permit payment to an assignee, appointed prior to the filing of a petition in bankruptcy, who rendered services in conjunction with the sale of the bankrupt's property subsequent to the filing of the petition in the absence of prior court authorization. 64 F.2d at 105, citing Randolph v. Scruggs, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165.

The Fourth Circuit has taken this position explicitly, holding that General Order 45 is directory and not mandatory. Littleton v. Kincaid, 179 F.2d 848 (4th Cir. 1950).[3]

■ In the instant case, statements made at oral argument suggest an additional ground for applying General Order 45 in a non-mandatory fashion. The trustee, with full knowledge of the Order and of petitioner's non-compliance therewith, may have encouraged Vidal to make efforts on behalf of the estate without informing him that, absent a court order authorizing these efforts, he would not receive compensation for them. Moreover, though the local rules of bankruptcy are silent on this point, it may well be that it was the trustee himself who had the responsibility to seek such a court order. *See* 3A Collier on Bankruptcy § 62.10. Under these circumstances, General Order 45 cannot be deemed an insurmountable obstacle to petitioner's claim.

The trustee urges another ground for denying petitioner's claim as an administrative expense. He contends that had

---

1. Petitioner's contention can be read to cover both possibilities:
   *Third Contention*: The Referee erred in not allowing Vidal's claim as an administrative expense. Vidal clearly rendered services to the bankrupt's estate after the filing of the petition. . . . These services were necessary to preserve the contract which the Trustee accepted and Vidal should have been compensated for his services.
   The cases petitioner cites to support this contention indicate, however, that the contention is addressed to compensation for the later services.

2. "No auctioneer or accountant shall be employed by a receiver, trustee or debtor in possession except upon an order of the court expressly fixing the amount of the compensation or the rate or measure thereof. The compensation of appraisers shall be provided for in like manner in the order appointing them."

3. *Collier* suggests that hard and fast application of the rule is not always appropriate, particularly in the case of realtors who are not specifically named in the Order along with other auxiliaries to trustees. 3A Collier on Bankruptcy § 62.11.

Vidal acted to maintain the McCuskers as ready buyers on behalf of Mrs. Kosting, in the absence of a petition in bankruptcy, rather than on behalf of the estate, he would have received no additional compensation for these services since his basic commission would have covered them. The fact that fortuitous circumstances switched the party to whom these same services were rendered, the trustee continues, should not suddenly entitle the petitioner to payment which would not otherwise be due him; nor, since Vidal's commission comprises the entire amount owed him since this was earned prior to the bankruptcy petition, should these circumstances raise the status of his claim for this commission to a position of priority.

While the petitioner conceded at oral argument, and this Court accepts, that petitioner would not have received additional compensation from Mrs. Kosting for the later services, it is clear that the estate in bankruptcy did, in fact, benefit from them, and under usual circumstances would have been required to pay for such efforts in its behalf by a real estate broker. Moreover, as noted above, there is some indication that the trustee encouraged Vidal to continue to serve the estate, although it is not clear whether Vidal anticipated compensation for this. "When the services of a real estate agent, known to be such by the vendor, are rendered under circumstances indicating that the agent expects to be compensated therefor, and the vendor, knowing the circumstances, avails himself of the benefit of those services, the law implies a promise by the vendor to pay for them. [citations omitted]" Metz v. Hvass Construction Co., 144 Conn. 535, 135 A.2d 363 (1957). Thus there is support for compensating Vidal's later services to the estate.

A choice must therefore be made between permitting the petitioner to collect compensation which in the normal course of the sale of a house would not be due him and allowing the estate to receive the benefit of petitioner's substantial efforts on its behalf without paying for them, under circumstances which suggest that the trustee may have deliberately encouraged such efforts to be expended.

The most reasonable solution to this tangle of conflicting equities is to deny Vidal any extra compensation beyond the commission originally earned but to allow priority status, as an administration expense, to that fair proportion of this amount which can be attributed to the later services rendered on behalf of the estate, while the balance of the commission remains a general claim. By this means, the petitioner will receive no more than he would otherwise be entitled to, and at the same time he will receive immediate proportional compensation for what can fairly be viewed as administrative expenses.

In the absence of findings of fact regarding the precise scope of Vidal's later services, it is not possible to compute the amount immediately due him under the above formula. This computation can best be made by the Referee, upon remand, based on such further evidentiary hearings as he may deem necessary. While his determination of the amount owed Vidal for his services to the estate should give primary weight to the time and effort actually expended by the petitioner on the estate's behalf, the Referee may, in his discretion, also take into account, in determining the appropriate amount to be given priority status, whether petitioner may—as a result of acts by the trustee—have properly believed he would receive a financial benefit for serving the estate. Such belief may be negatived if it is established that the petitioner had knowledge of General Order 45 and failed to apply to the bankruptcy court or to request the trustee to do so.

Accordingly, the petition for review is granted and the matter is remanded to the Referee for further proceedings consistent with this opinion.