**In re BATHS INTERNATIONAL, INC., Debtor.**

**Bankruptcy No. 82 B 10636.**

United States Bankruptcy Court, S.D. New York.

Dec. 13, 1982.

Rattet & Vogelman, New York City, for debtor.

Helfand & Alter, New York City, for Reuben H. Donnelley Corp.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

On April 5, 1982, Baths International, ("Baths"), a wholesaler and retailer of saunas and related equipment, filed a Chapter 11 petition under the Bankruptcy Reform

Act of 1978 ("Code"). A major part of its pre-petition marketing strategy was a program of advertising in various Yellow Pages across the country. This advertising was placed through a contract with Reuben H. Donnelly, Inc., ("RHD"), who is now asking that certain advertising fees for ads placed and closed before the filing of the petition but published post-petition, be allowed as administrative expenses. This request is, for reasons stated below, denied.

*Facts*

### A. *Background*

Yellow Pages directories are published independently for each region. Due to their large number, directories are published throughout the year. Each directory has a deadline, called the closing date, after which no advertising can be added or deleted. The closing date allows the publisher to begin organizing and arranging the actual directory. The actual publication date may not occur for up to six months after the closing date. After publication the publisher bills the purchaser of advertisement. If an intermediary such as RHD placed the advertisement, RHD will, in turn, bill the ultimate advertiser, in this case, Baths. This billing procedure may add an additional two months to the process from placing a Yellow pages advertisement to payment.

### B. *The Contract*

Baths, through its in-house agency, Big Toe Advertising, ("Big Toe"), entered into a master contract with RHD on September 5, 1978 ("Service Agreement"). This was on a form contract provided by RHD (RHD National Yellow Pages Service Form 8005) and was not altered by the parties. Under the Service Contract, Baths, through Big Toe, would request an ad be placed in a particular Yellow Pages. Each ad was handled separately, and was submitted to RHD on a specified order form. Once an ad was accepted by the Yellow Pages publisher, the order form became "a part of this Agreement." Service Contract ¶ 2. RHD would bill Big Toe; if Big Toe failed to pay, RHD could bill Baths directly. Service Contract ¶ 6(d). If RHD desired to raise its commis-

sion, it had to notify Big Toe at least 30 days prior to closing. Service Contract ¶ 6(a). The Service Contract, itself, could be cancelled at any time by either party but, such cancellation was not effective for advertising in Yellow Pages whose closing date had passed. Although the relationship between the debtor and RHD was governed by one Service Agreement, each contract to publish an advertisement in a particular Yellow Pages directory is properly viewed as a separate contract.

*Issue*

The controversy here is the classification of the debt due RHD for advertising ordered pre-petition, with a pre-petition closing date, but not published until after the filing of the petition. It is agreed that where both the closing and the publishing date are pre-petition, the debt is a pre-petition debt—general and unsecured; where both closing and publication occur post-petition, the debt is a post-petition debt—an administrative expense entitled to priority under Code section 503(b)(1)(A).

Where closing and publication dates straddle the petition date, the question arises—which date is the date of performance. If performance is completed at closing, the contract to place Yellow Pages advertising deemed executed at the time of the filing and the debt is a pre-petition one. If performance is completed upon publication, the contract is executory at the time of filing and any debt arising from post-petition performance is administrative.

*Discussion*

Code section 503(b)(1)(A) allows as administrative expenses "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." This section was derived from section 64(a)(1) of the Bankruptcy Act of 1898 which provided a priority for "the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition." Report of the Committee on the Judiciary, *Bankruptcy*

*Law Revision,* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 355 (1977); Report of the Committee on the Judiciary, *Bankruptcy Reform,* S.Rep. No. 95–989, 95th Cong., 2d Sess. 66 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787.

■ It is possible for a claim arising out of a pre-petition contract with the debtor to be a priority expense if the claim was "incurred" after the filing date. *Denton & Anderson Co. v. Induction Heating Corp.,* 178 F.2d 841, 843 (2d Cir.1949). In that case, our Circuit Court held that a claim for commissions on sales orders accepted before the debtor filed, but filled afterward, was not a priority claim, saying:

> We see nothing in appellant's contention that appellant should have a preferred claim because the debtor's estate was, by appellant's services, enriched when debtor, having filled the orders, was paid. The estate was no more enriched than it would have been had the debtor brought goods on credit before filing the arrangement and sold them afterwards; and no one would argue that the unpaid seller of such goods is entitled to more than a general claim.

178 F.2d at 844.

Thus, a dual standard for priority status is established: the debt must be beneficial to the estate and incurred by the debtor in possession. The First Circuit followed and further articulated this dual standard in *In re Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir.1976). That Court held:

> For a claim in its entirety to be entitled to first priority under § 64(a)(1), the debt must arise from a transaction with the debtor in possession. When the claim is based upon a contract between the debtor and the claimant, the case law teaches that a creditor's right to payment will be afforded first priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor in possession in the operation of the business. When third parties are induced to supply goods or services to the debtor in possession pursuant to a contract that has

not been rejected, the purposes of § 64(a)(1) plainly require that their claims be afforded priority. It is equally clear that a claimant who fully performs under a contract prior to the filing of the petition will not be entitled to first priority even though his services may have resulted in a direct benefit to the bankrupt estate after the filing.

536 F.2d at 954 (footnote and citation omitted); *see also Boston & Maine Corp.,* 600 F.2d 307, 312 (1st Cir.1979) (railroad reorganization case; held: "Claims are 'post-filing' if the consideration supporting them was received by the trustee, not the debtor," citing both *In re Mammoth Mart* and *Denton & Anderson Co. v. Induction Heating Corp.*).

■ Thus, the mere fact that the ads placed by RHD prior to the petition will continue to benefit the estate in the post-petition period is insufficient to give RHD a priority. To gain priority status, performance must be given to the trustee or debtor in possession, not the pre-petition debtor.

■ Regarding contracts to place Yellow Pages advertisements, performance is completed on the closing date. Therefore, regarding the "straddle" advertisements where the closing date pre-dates the filing of the petition but publication occurs post-petition, performance is rendered to a pre-petition company, not the debtor in possession. Baths ordered advertisements and RHD accepted them before the petition filing. RHD then placed advertisements with the appropriate Yellow Pages. Once the pre-petition closing dates of those directories passed, RHD had performed. After the closing date, RHD could no longer withdraw from its obligation with the Yellow Pages. Nor could it withdraw from its contract with Baths or modify that contract as to closed ads. Service Contract ¶ 6. All that remained from RHD to do after the closing date were mere bookkeeping and ministerial functions: checking that the advertisements are actually published and billing. The closing date is the effective date of performance. When that date falls before the filing of a Chapter 11 petition, the

performance is rendered to a pre-petition company, not the debtor.

*Conclusion*

This Court finds that the assertion of RHD for priority status as an administrative claim fails to meet the dual standard for that status. We also take note of *In re Jartran, Inc.,* No. 81 B 16118 (Bankr.N.D.Ill. Sept. 30, 1982), where in similar circumstances involving the same creditor, RHD, the Bankruptcy Court denied administrative status to a similar claim.

The application of RHD is denied.