### In re HALYARD REALTY TRUST, Debtor.

### Lewis E. BENN, Jr., D/B/A Depot Realty, Plaintiff,

v.

### HALYARD REALTY TRUST, Defendant.

Bankruptcy No. 81–01600–JG.
Adv. No. A–82–0129.

United States Bankruptcy Court,
D. Massachusetts.

Aug. 30, 1983.

FDIC's motion to dismiss.

---

4. This order reduces to writing the oral ruling issued by this court on May 26, 1983, denying

Alan M. Winsor, Hyannis, Mass., for plaintiff.

Peter L. Zimmerman, Silverman & Kudsich, Boston, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The Complaint of the Plaintiff, Lewis E. Benn, Jr., d/b/a Depot Realty ("Depot") seeks to recover $5600 from the debtor, Halyard Realty Trust, ("Halyard") as a broker's commission for the sale of Halyard's real estate and further seeks to impress a lien on the parcels sold.

Based upon the testimony taken and exhibits introduced, the Court finds the following facts in accordance with Bankruptcy Rule 7052.

In September 1980 Mr. Lewis Benn, Sr. ("Benn"), a licensed real estate broker, and the father of the principal of the Plaintiff, contacted Mr. Joseph Petroni, Sr. in response to an advertisement by Petroni for land. Prior to 1980 Frank Walters ("Walters") one of the principals of Halyard, had listed parcels of the debtor's real estate with Depot, and had agreed to pay a commission to Depot on each sale.

After viewing the property with Benn, Mr. Petroni, Sr. on behalf of Coral Estates, Inc., executed an offer to purchase real estate, prepared by Benn, providing that Coral Estates would buy lots "123, 124, 125, 126, 127, 128, 129, Agnus" for $63,000. A purchase and sale was to be executed on or before October 7, 1980, the offer was to expire on October 1, 1980, and a broker's commission of $5600 was to be paid to Depot. Coral Estates paid $500 as a deposit with the offer which was accepted by Halyard. Coral Estates, Inc., by Joseph Petroni, Sr. and Halyard, by Frank Walters, entered into a purchase and sale agreement drafted by Walters on October 16, 1980 for the same lots for $56000. Even though the broker was neither a party to nor mentioned in the agreement, the seller agreed that it would pay $5600 to Depot as a commission. Under the agreement, the closing was to take place in thirty days. Upon entering into the agreement, Petroni, with Halyard's knowledge, began making improvements to the land which over the next year totalled $12,000. The closing did not take place in accordance with the agreement because Halyard was unable to deliver good title to the lots as creditors of Halyard had attached the real estate in the fall of 1980. There was no evidence that either Coral Estates or Petroni was unable or unwilling to perform their obligations under the October 1980 agreement. The reason the sale was not consummated was Halyard's inability to perform by reason of the attachments.

When the time for closing had expired under the October agreement, Benn attempted numerous times to contact Walters by telephone but was unsuccessful. Another Depot broker also attempted to discover the status of the sale from Walters.

In January 1982, the debtor filed with the Bankruptcy Court an Application To Sell lots 123 through 129, and on January 19, 1982 the court issued an order allowing the

sale. In addition to terms providing for the payment of taxes, second mortgages, the order provided that the debtor pay "the customary closing costs ... and broker's commission due and owing not to exceed 10% of the sales price of each lot." Thereafter apparently Benn became aware of the court order because in early February, 1982 he went to Petroni's lawyer's office at which time he was informed by Walters that he would not be paid a commission as the parties had entered into a new transaction. On February 8, 1982, Halyard by Walters, and Petroni & Son Builders, Inc. by Joseph Petroni, Sr. entered into a purchase and sale agreement concerning lots 123 through 129 for $56,000. The agreement, prepared by Walters, did not provide for a broker's commission.

The corporations Petroni & Son Builders, Inc. and Coral Estates, Inc. are owned and controlled by Joseph Petroni, Sr.

The issues presented are: whether Depot is entitled to a broker's commission for the sale of the lots to Petroni & Sons Builders, Inc., and if so, whether Depot is entitled to impress a lien on the real estate.

 Under Massachusetts law, a broker is entitled to a commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner; (b) the purchaser enters into a binding contract with the owner to do so; and (c) the purchaser completes the transaction by closing title in accordance with the provisions of the contract. "If the contract is not consummated because of the lack of financial ability of the buyer to perform *See, Horne v. Vanni,* 1 Mass.App. 841, 300 N.E.2d 924 (1973), or because of any other default of his, there is no right to a commission against the seller; however, *if the failure of the completion results from a wrongful act or interference of the seller, the broker's claim is valid and must be paid.*" (Emphasis Added). *Tristam's Landing, Inc. v. Wait,* 367 Mass. 622, 327 N.E.2d 727 (1975). When a broker finds a buyer who enters into a purchase and sale agreement which is not consummated because of the seller's inability to deliver good title as

promised, the broker has earned his commission even though title has not passed. *Le Donne v. Slade,* 355 Mass. 490, 245 N.E.2d 434 (1969).

 The mere introduction of a customer to a seller does not earn the broker a commission. *Whitcom v. Bacon,* 170 Mass. 479, 49 N.E. 742 (1898). The broker's services must have been the "efficient cause" of bringing about the sale. *Bonin v. Chestnut Hill Towers Realty Co.* 14 Mass.App. 63, 436 N.E.2d 970 (1982). To prove his case the broker must show these elements: (1) that he was employed; (2) that his customer bought the property on terms not materially different from the requirements of the seller; (3) that no new forces intervened to break the causal chain between the broker's efforts and the sale. *Holton v. Shepard,* 291 Mass. 513, 197 N.E. 460 (1935). Where a broker introduces a customer to a seller who enters into a sales agreement, and the seller thereafter excludes the broker from subsequent negotiations, the broker is entitled to be paid his commission. *McEvoy v. Ginsberg,* 345 Mass. 733, 189 N.E.2d 546 (1963).

 That a buyer takes title in the name of another entity does not effect the broker's right to a commission if the nominee is in fact the same buyer as the broker's customer. *Kenny v. DiCenso,* 10 Mass.App. 835, 404 N.E.2d 691 (1980).

 Based upon these principles, Depot is entitled to a commission from Halyard. The history of dealings between Depot and Halyard supports the conclusion that the broker was hired by Halyard, although the arrangement was oral and rather loose.

Depot's agent introduced the customer, Petroni, to Walters. An offer was accepted and the parties entered into a sales agreement in October 1980. Depot's effort was the procurring cause of the agreement. Thereafter the seller, Halyard, failed to perform its obligations under the agreement because it could not convey good title as warranted. At this point Depot became entitled to its broker's commission because the failure to complete the sale was attrib-

utable to the breach by Halyard. That title did not pass as contemplated is legally irrelevant to Depot's entitlement because the seller did not complete its portion of the bargain. Whether or not a closing ever took place, Depot's commission became due upon Halyard's breach of the purchase and sales agreement.

Even if the seller had not breached, Depot would have been entitled to its commission when title passed in 1982 even though Petroni's nominee was a different corporation. The passage of time cannot be considered an intervening cause when the delay in closing was caused by the seller, where the agreement with the nominee was exactly the same as the sale procured by the broker, and where the buyer had made substantial improvements during the period between the first agreement in October 1980 and the closing in 1982.

Accordingly, based on either of these reasons, it is my conclusion that Depot is entitled to a broker's commission in connection with the sale of lots 121 through 129.

The status of Depot's claim in this Chapter 11 case next must be determined. Depot requests that the Court impress a lien on the real estate purchased by Petroni, but cites no authority, legal or equitable, in support of such a remedy and the Court has not located any authority for such relief. Even if an equitable or legal basis existed, I would be unwilling to impress a lien on the real estate now owned by Petroni for nearly a year, and possessed by him for two years, where there was no evidence that he ever promised to pay a broker's commission. The liability in this case rests solely with Halyard.

Although Depot does not advance the argument that its claim should be treated as an administrative expense, the Court believes it is necessary to address this issue because in its brief Depot relies on a reference in an Order of this Court dated January 8, 1982 for payment of a broker's commission in support of its claim of preferred status.

It is well-settled that claims arising out of the performance of services by one who has acted in a private capacity, which have the incidental effect of preserving a debtor's property, are not entitled to priority status and such claimants have only a general claim against the estate. *W. Moore, 4 Collier on Bankruptcy,* Par. 67.-102(2) (14th ed. Supp.1982). One who fully performs under a contract prior to the filing of the bankruptcy petition is not entitled to an administrative claim even though his services may have benefited the estate after the filing. *In Re: Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir.1976). A debt is not treated as a priority administrative expense simply because the claimant's right to payment arises after the debtor in possession has taken some action. *In Re: Freedomland, Inc.* 480 F.2d 184 (2d Cir.1973). To gain priority status performance must be given to the debtor in possession not the pre-petition debt. *In Re: Baths International, Inc.,* 25 B.R. 538, 9 B.C.D. 1316 (Bkrtcy.S.D.N.Y.1982). Only where a broker performs services for the debtor in possession or the Trustee after the filing of the petition is he entitled to claim his commission as an administrative expense. *In Re: Kosting,* 350 F.Supp. 1071 (D.Conn.1972). A broker's commission originally earned before the bankruptcy is a general unsecured debt. *Id.* at 1075.

Thus, as a matter of law it is clear that Depot's commission earned before the filing is not compensable as a first priority administrative expense because Depot performed no services for the debtor in possession. The event of a closing after the bankruptcy filing does not elevate its claim where services were entirely performed nearly one year before the filing. The oblique reference to a broker's commission in this Court's Order of January 8, 1982 does not alter this conclusion because Depot was not mentioned in the Application To Sell or Order.

Accordingly, judgment shall enter for the Plaintiff in the amount of $5600. This obligation shall be treated as a general unsecured claim owed by the debtor.