In re INTERSTATE GROCERY DIS-
TRIBUTIONS SYSTEM, INC. and
G & M Realty Corp., Debtors.

No. 96–29457(DHS).

United States Bankruptcy Court,
D. New Jersey.

Oct. 4, 2001.

Pamela A. Hulnick, Kaplan & Hulnick, LLC, Hackensack, NJ, for Chance Freight Station, Inc.

Daniel M. Eliades, Forman Holt & Eliades, LLC, Rochelle Park, NJ, for Barbara Edwards, Chapter 7 Trustee.

## OPINION

DONALD H. STECKROTH,
Bankruptcy Judge

This matter is before the Court upon motion by Chance Container Freight Station, Inc. ("Chance" or "Movant") seeking (1) relief pursuant to Federal Rule of Civil Procedure 60(b) from the July 25, 2000 order of this court directing turnover of Chance's real estate deposit to the Chapter 7 trustee; and (2) payment of a Chapter 7 administrative expense claim for work performed which allegedly benefitted the estate. Barbara Edwards, the Chapter 7 trustee ("Trustee"), has opposed the motion.

The motion was scheduled for hearing on June 25, 2001, at which time the Court adjourned proceedings until July 16, 2001 to give Movant's counsel time to properly notice Rachel Kaplan, Esq. and her law firm, Movant's former attorney, because serious allegations of attorney negligence were made against Ms. Kaplan in the Movant's certification in support of its motion. On July 16, 2001, neither Ms. Kaplan nor her firm appeared in court, nor have certifications been filed denying the allegations. The Court heard argument and reserved decision, giving the parties the time they requested to attempt to amicably resolve the matter. Their efforts have not been successful and this opinion now issues.

The court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1334(b) and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E) and (O). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the court's findings of fact and conclusions of law, in accordance with Bankruptcy Rule 7052.

### FINDINGS OF FACT

Interstate Grocery Distributions System, Inc. ("Interstate"), filed a petition

under Chapter 11 of the Bankruptcy Code on October 22, 1996. On March 5, 1997, an order was entered converting the proceeding to a Chapter 7 case. On May 22, 2000, an order was entered extending the Interstate bankruptcy proceeding to encompass G & M Realty Corporation ("G & M"), a wholly-owned corporation of Interstate's sole shareholder, and directed that the assets and liabilities of G & M be consolidated with the Chapter 7 estate of Interstate. The Trustee was directed to administer the consolidated estate. Thereafter, pursuant to motion by the Trustee, an order was entered on July 25, 2000 directing the turnover of Chance's deposit paid to G & M's attorney for the purchase of real property commonly known as 2200 48th Street, North Bergen, New Jersey (the "Property"). Said Property was owned by G & M Realty and had been the site of Interstate's trucking business.

In October 1999, Francisco Torres, president of Chance, entered into contract negotiations for the purchase of the Property from G & M. The terms of the contract provided for a $300,000 purchase price and a $15,000 deposit to be paid by Chance. Rachel Kaplan, Esq. was retained to represent Chance in the transaction. On November 18, 1999, Ms. Kaplan forwarded a $15,000 deposit check to G & M's attorney along with a signed copy of the contract. This was prior to the extension of the Interstate bankruptcy proceedings to G & M. Thereafter, Chance voluntarily undertook efforts to clean-up and repair the Property so that it would be ready for occupancy upon closing. The contract does not give Chance authority to undertake this work and no use and occupancy agreement providing for Chance to perform work on the Property was signed.

In February 2000, Ms. Kaplan received notice from the Trustee of the Interstate bankruptcy proceeding and the motion seeking substantive consolidation of G & M with the bankruptcy estate. She was advised that closing on the Property could not take place until the Trustee's motion to consolidate was decided. Trustee's counsel also contacted Ms. Kaplan by letter and requested documentation regarding the real estate transaction. The letter advised that once the documents were reviewed, the Trustee would be in a position to consider whether to move the approval of the contemplated sale before the bankruptcy court. The requested documents were not provided. A second letter dated June 14, 2000 was forwarded to counsel enclosing the court's consolidation order. The letter reiterated the request for documents and the possibility of moving forward with the sale with the approval of the bankruptcy court. Again, Chance's counsel failed to respond.

G & M's counsel advised the Trustee that he had previously forwarded a time of the essence letter to Chance's counsel demanding that Chance close and that Chance did not close and had defaulted on the purchase. He advised that he held Chance's $15,000 deposit in trust and that G & M had taken the position that Chance had breached the parties' agreement by not closing. As a result, the Trustee filed a motion seeking an order directing turnover of the deposit as property of the estate ("Turnover Motion") on notice to Ms. Kaplan, Chance's counsel. Chance did not respond to the Turnover Motion and an order granting turnover was entered on July 25, 2000.

The Trustee subsequently retained a realtor to market and sell the Property. A sale was approved by the bankruptcy court and a closing took place on May 30, 2001. The closing price was $367,500 less a $20,000 credit to the buyer for environmental remediation.

Chance acknowledges that it was advised in February 2000 about the bankruptcy proceedings and the delay in closing by Ms. Kaplan, its counsel. Chance asserts that Ms. Kaplan assured Chance that she would keep them advised of the situation. After a few additional months of inactivity, Chance contacted Ms. Kaplan but states it received no response. Finally, in October 2000, Chance contacted the Trustee directly, asking her to return the deposit monies as it did not appear that the closing would take place. It was at this time that Chance discovered the court had ordered the turnover of the $15,000 deposit to the Trustee. Eleven months after the July 25, 2000 order was entered and almost eight months after learning of the actual turnover of the deposit, Chance comes before the court on the instant motion seeking relief.

### *LEGAL CONCLUSION*

Chance asserts that it is entitled to relief from the turnover order of July 25, 2000 under Federal Rule of Civil Procedure 60(b). In short, Chance argues that its attorney's failures constitute excusable neglect under Rule 60(b) and that the court should grant it relief and reverse the order turning over the $15,000 deposit to the Trustee. Additionally, Chance seeks payment of a Chapter 7 administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A) for the work it performed on the Property which it asserts was performed post petition and caused an increase in value, thus providing a benefit to the estate.

In response, the Trustee argues that Chance, after failing to oppose the Turnover Motion and waiting almost a year after its entry, has not established a valid case for excusable neglect under Rule 60(b). Secondly, the Trustee argues that Chance is barred as a matter of law from obtaining an administrative expense under § 503(b) for the costs it voluntarily incurred in connection with the Property because it failed to provide benefit to the estate. 11 U.S.C. § 503(b).

■ The court must determine whether the neglect of Chance's attorney and Chance's own neglect and delay in bringing this motion constitute excusable neglect under Federal Rule of Civil Procedure 60(b). Rule 60(b), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024,[1] states in pertinent part:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken.

In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partner-*

---

1. Rule 9024 provides:
   Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), (2) a com-

   plaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.

*ship,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court set forth the analysis required for a finding of "excusable neglect" in a matter involving Bankruptcy Rule 9006.[2] In *Pioneer,* the Supreme Court determined that a Chapter 11 creditor was entitled to file its proof of claim after the deadline set by the bar date because its failure to file timely was the result of excusable neglect within the meaning of Rule 9006. *Id.* at 398–99, 113 S.Ct. 1489. The Supreme Court held that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388, 113 S.Ct. 1489.

The Supreme Court in *Pioneer* stated that whether neglect is excusable is an "equitable" determination that "tak[es] account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. 1489. To make an excusable neglect determination, the Court listed four factors for trial courts to consider: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395, 113 S.Ct. 1489. Significantly, the Court found that clients "must be held accountable for the acts and omissions of their attorneys" and that the "proper focus is upon whether the neglect of [*the*

*clients* ] *and their counsel* was excusable." (Emphasis added) *Id.* at 396–97, 113 S.Ct. 1489.

The Third Circuit Court of Appeals in *In re O'Brien Environmental Energy, Inc.,* extended the *Pioneer* holding to Rule 60(b) actions:

> The phrase "excusable neglect" appears not only in Rule 9006(b) but in Federal Rules of Civil Procedure 6(b), 13(f), and 60(b), Federal Rule of Criminal Procedure 45(b), and Federal Rule of Appellate Procedure 4(a). The Supreme Court referred to each of these rules in construing the "excusable neglect" analysis in *Pioneer. Pioneer,* therefore, is commonly understood to provide guidance not just with regard to Rule 9006, but in other bankruptcy contexts discussing the issue of excusable neglect (citations omitted) ... Thus, the *Pioneer* analysis applies in the context of a Rule 60(b) motion, as in this case.

188 F.3d 116, 126, n. 7 (3rd Cir.1999).

In the instant matter, Chance argues that its attorney's actions or inactions constitute "excusable neglect" sufficient to grant it relief from the turnover order under Rule 60(b). In support of this position, Chance relies upon *In re Johnson,* 232 B.R. 319, 322 (Bankr.D.N.J.1999), a case which considered the parameters of "excusable neglect" under Rule 60(b) and which held that:

> [a]n attorney's negligence absolutely qualifies as excusable neglect under Rule 60(b), but does not under Bank-

---

**2.** Fed. R. Bankr.P. 9006(b)(1) provides:

(b) *Enlargement.*

(1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1)

with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect.* (Emphasis added)

ruptcy Rule 9006. *See In re Pioneer, supra.* This relates in part to the equitable nature of Rule 60(b) on the one hand; and to the concerns for finality of Bankruptcy Rule 9006 on the other hand.

*Johnson,* however, was decided prior to the Third Circuit's decision in *O'Brien Environmental* which determined the *Pioneer* analysis applicable to a Rule 60(b) motion. The court is also mindful of the split of authority on the issue of whether attorney negligence constitutes "excusable neglect"[3] and notes that a decision by a trial court judge is not binding on other judges within the same court. *Threadgill v. Armstrong World Indus.,* 928 F.2d 1366, 1371 (3rd Cir.1991); *In re Mays,* 256 B.R. 555, 559 (Bankr.D.N.J.2000).

In *Johnson,* the debtor filed a motion to void the lien of a creditor under 11 U.S.C. § 522(f). The creditor's attorney filed opposition to the motion, but failed to raise the appropriate legal issues. 232 B.R. at 320. The attorney also failed to appear before the court on the hearing date and the court entered the order as "uncontested." The creditor's attorney did not file a motion for reconsideration within the 10–day time period required by the local bankruptcy rules. See L.B.R. D.N.J. 9013–1(h). He did, however, write a letter to the court approximately three weeks later in which he requested the court reschedule the matter and dispense with the requirement of a motion for reconsideration. *Id.* at 320. The court advised counsel that a motion was necessary. Less than three months after the initial order was entered, the creditor's new counsel filed a motion to vacate the order. In

holding in favor of the creditor based on excusable neglect, the court held that *Pioneer* "relates only to enlargement of time for late filed proofs of claim under Fed. R.Bankr.P. 9006, not motions under Fed. R.Civ.P. 60(b)." *Id.* at 323. Having made that determination, the bankruptcy court granted relief to an otherwise blameless party for his attorney's negligence and found the attorney's negligence constituted excusable neglect sufficient to grant relief under Rule 60(b).

■ In the case at bar, this court disagrees with Chance's assertion that its attorney's inaction requires a finding of "excusable neglect." There are significant facts which mitigate against this creditor when applying the *Pioneer* test. Chance is not blameless. It admits to being aware of the bankruptcy proceedings as early as February 2000. Long after failing to receive responses from its counsel, Chance contacted the trustee in October 2000, approximately three months after the turnover order was entered. At that time, Chance was made fully aware of the bankruptcy extension over the assets of G & M and, most importantly, the Property which it sought to purchase as well as the turnover of its deposit to the Trustee. Inexplicably, Chance waited until May 21, 2001, to file the instant motion. While the court recognizes that a Rule 60(b) motion may be made within one year, much of the case law granting relief for excusable neglect involves motions brought within a much shorter period of time. *See e.g., Johnson, supra* (less than three months); *O'Brien Environmental, supra* (two-month delay); *In re Cendant Corp. PRIDES Litigation,*

---

**3.** In contrast to Judge Gindin's decision in *Johnson,* several cases have held that attorney negligence rarely establishes excusable neglect under Rule 60(b). *In re Richard Morris,* 252 B.R. 41, 46 (Bankr.S.D.N.Y.2000) (citing *Mason Tenders Dist. Council Welfare Fund v.*

*M & M Contracting & Consulting,* 193 F.R.D. 112, 115 (S.D.N.Y.2000); *Cobos v. Adelphi Univ.,* 179 F.R.D. 381, 385 (E.D.N.Y.1998)); and *S.E.C. v. McNulty,* 137 F.3d 732 (2nd Cir.1998) (where attorney conduct was not determined to constitute excusable neglect).

235 F.3d 176, 183 (3rd Cir.2000) (three-week delay). The length of delay in seeking relief is significant. *See O'Brien Environmental, supra*, at 129–130. Here, Chance waited almost eight months after learning of its attorney's negligence and no reasonable explanation is proffered for the length of this delay nor proof that such delay was out of the creditor's control. In addition, the court observes that it has been offered no legal justification for the return of the deposit to Chance since Chance defaulted under the contract of sale. Finally, Chance is not without relief. It still has available causes of action based on the allegations of negligence it has set forth in its certifications. Any relief, however, should not equitably come from this estate because the creditor's neglect is not excusable. Thus, the motion for relief under Rule 60(b) is denied.

■ The second issue raised is whether Chance is entitled to an administrative expense claim under 11 U.S.C. § 503(b)(1)(A) for the work it performed on the Property in anticipation of closing. Chance argues it is entitled to an administrative claim of $26,794.40 for the cost of goods and services provided in improving the Property. It contends that the clean-up work increased the value and selling price of the Property. In contrast, the Trustee urges the court to deny Chance's request for an administrative claim because the activities pursued by Chance were performed voluntarily, solely for Chance's self interest and without benefit to the estate. The Trustee points out there was no benefit to the estate because the Property was ultimately sold for a sum less than the liens held by the secured creditors and no funds were therefore made available to the general creditors through Chance's efforts.

■ Section 503(b)(1)(A) of the Code defines an administrative expense as including, "[t]he actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case ..." Administrative expenses are categorized as a first priority claim in a bankruptcy case. 11 U.S.C. § 507(a)(1). The purpose of granting administration expenses with a priority for payment is to encourage creditors to cooperate with a debtor's reorganization efforts so that the debtor can effectively reorganize and continue its business, thereby maximizing the value of the estate for the benefit of all creditors and preventing unjust enrichment of the bankrupt estate. *In re The Grand Union Co.*, 266 B.R. 621, 625–26 (Bankr.D.N.J.2001); *In re Baldwin Rental Centers, Inc.*, 228 B.R. 504, 511 (Bankr. S.D.Ga.1998) (citing *Alabama Surface Mining Comm'n v. N.P. Mining Co. (In re N.P. Mining Co.)*, 963 F.2d 1449, 1452 (11th Cir.1992)). The burden of proving entitlement to an administrative expense claim is on the claimant and the measure of proof is preponderance of the evidence. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 482 (Bankr.S.D.N.Y.1991).

■ Courts have established demanding criteria for determining whether a claim should be afforded an administrative priority. *In re Molnar Bros.*, 200 B.R. 555 (Bankr.D.N.J.1996); *In re Mahoney–Troast Construction Company*, 189 B.R. 57 (Bankr.D.N.J.1995); *In re Hanlin Group, Inc.*, 176 B.R. 329, 333 (Bankr. D.N.J.1995); *In re Lease–A–Fleet, Inc.*, 140 B.R. 840, 844–45 (Bankr.E.D.Pa.1992). The seminal case *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976) sets forth the test generally followed. First, the claim must arise from a post-petition transaction with the debtor. Second, when the claim is based on a contract between the debtor and the claimant, a creditor's right to payment will be afforded first priority only to the extent that the consid-

eration supporting the claimant's right to payment was both supplied to and beneficial to the estate. *Id. See also, In re Molnar Bros.,* 200 B.R. at 559 (citations omitted).

The real estate transaction between Chance and G & M started in October 1999. At that time, G & M was not in bankruptcy. In May 2000, the order consolidating the G & M assets and liabilities with Interstate's bankruptcy proceeding was entered. Thus, the contract with G & M for the purchase of the Property predated the extension proceeding and, in fact, was never approved by the Bankruptcy Court. The services performed by Chance which it alleges are entitled to administrative expense priority have not been demonstrated, by a preponderance of the evidence, to have been performed after the extension of the bankruptcy proceeding over the G & M assets. The timing of the services, however, is not the only failure.

■■■ The second prong of the *Mammoth Mart* test is whether there has been a substantial contribution warranting reimbursement as an administrative expense and the applicant has shown an actual and demonstrable benefit to the debtor's estate and creditors. *Lebron v. Mechem Financial, Inc.,* 27 F.3d 937 (3rd Cir.1994). Inherent in this concept is that the benefit received by the estate must be more than an incidental benefit arising from the applicant's activities pursued in protecting the applicant's own interest. *Id. See also In re Bellman Farms, Inc.,* 140 B.R. 986 (Bankr.D.S.D.1991) (where it was determined a creditor's efforts undertaken solely to further its own self interest are not compensable); *In re Halyard Realty Trust,* 37 B.R. 260, 264 (Bankr.D.Mass. 1983)("[c]laims arising out of the performance of services by one who has acted in private capacity, which have the incidental effect of preserving debtor's property, are not entitled to priority status and such claims have only a general claim against the estate.").

Here, Chance contends that its actions benefitted the estate through improvements to the Property which resulted in an increased selling price. The Chance contract was for $300,000. The Property ultimately sold for a net price of $347,500. Despite this increase, there is no indication or proof in the record that the higher sale price resulted from the voluntary services of Chance (as opposed to simple market increases) and, in any event, the Property was sold for less than the secured liens. Absent a carve out by the secured creditors to the estate, unsecured creditors would not receive any distribution from the sale and thus no benefit has been realized. Finally, the court points out that the actions of Chance were performed in furtherance of its private interest in anticipation of having the Property ready for occupancy on the date of closing, and there was no agreement in place allowing these services to be performed. Chance assumed the risk of any costs it incurred in improving the Property. The court finds that the actions of Chance were without authority and did not benefit the estate. An administrative expense claim is not warranted.

### CONCLUSION

For all of the above reasons, Chance's motion seeking relief from the July 25, 2000 turnover order under Rule 60(b) and for payment of an administrative expense claim is DENIED. The attached order has been entered by the Court.