No. 89-107

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

ALDRICH & COMPANY,

Plaintiff and Respondent,

-vs-

DAN J. DONOVAN, d/b/a D.J. DONOVAN
CONSTRUCTION,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Dan J. Donovan, pro se, Denver, Colorado

For Respondent:

Thomas J. Stusek; Work Law Firm, Billings, Montana

---

Submitted on Briefs: June 30, 1989

Decided: August 15, 1989

Filed:

_____
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a judgment for amounts due and owing on a promissory note and a customer's job-by-job account. Dan Donovan, d/b/a D.J. Donovan Construction (Donovan), is a building contractor. Aldrich & Company (Aldrich), is a retailer of building supplies. Donovan executed a promissory note for approximately $5,400 owed to Aldrich on an "open" account. He also maintained a "job-by-job" account with Aldrich, each item charged being assigned to a specific project. Due to nonpayment of amounts due on the note and the account, Aldrich brought suit in the District Court of the Thirteenth Judicial District, Yellowstone County. Donovan counterclaimed for fraud and breach of warranty regarding building materials purchased from Aldrich. Both sides moved for summary judgment. Aldrich obtained a summary judgment in its favor. On appeal, Donovan argues procedural matters and there are questions of material fact which exist as to Aldrich's claim. We affirm the District Court's judgment.

Donovan presents three issues for review:

1. Did the District Court's denial of summary judgment to Donovan, in violation of Rules 8(d) and 36(a) and (b), M.R.Civ.P., constitute an abuse of judicial discretion and/or clear error requiring reversal and entry of judgment for Donovan?

2. Did the District Court's grant of summary judgment to Aldrich, in spite of its failure to file an Answer to the First Amended Counterclaim, constitute an abuse of discretion requiring reversal?

3. Should the District Court's judgment be reversed, and the cause remanded for trial?

While working as a contractor in Billings, Donovan concentrated on residential and commercial remodeling. He maintained an "open" charge account with Aldrich. Donovan encountered problems in making payments on his open account. When the account reached approximately $5,200, Aldrich informed Donovan that he would have to execute a promissory note in that amount before any further credit could be extended to him. In July of 1984, Donovan executed such a note.

Aldrich then agreed to open a "job-by-job" charge account for Donovan. Charges to the account included items used in a remodeling job for a Mr. Graff. Graff and Donovan had a disagreement during the course of the job, and Donovan refused to charge any more materials for Graff to the job-by-job account. Graff then agreed to open his own account with Aldrich, which he used to charge items for the work being done by Donovan. Due to nonpayment of mounting sums owed on the Graff project, Aldrich eventually placed a mechanic's lien on Graff's house. The lien was later foreclosed, and according to Aldrich, the proceeds were used to pay off both Graff's own account and the charges in Donovan's job-by-job account related to the Graff job.

Donovan continued to have problems paying Aldrich. In January of 1986, Aldrich initiated this action for nonpayment against Donovan, seeking collection of the note. In February of 1986, Aldrich amended its complaint to add a claim for the unpaid balance of Donovan's job-by-job account.

The pleadings and motions in this case are a morass. The case reached a point where the matters to be addressed by the District Court were: (1) Aldrich's renewed motion for summary judgment, with attendant briefs, affidavits and exhibits; and (2) Donovan's combined motion for (a) leave to amend his counterclaim a second time, (b) summary judgment,

and (c) to reopen and compel discovery, also accompanied by briefs, affidavits and exhibits. The court granted Donovan's motion to amend his counterclaim, but denied his discovery and summary judgment motions. The court granted Aldrich's motion for summary judgment. This appeal followed.

At the outset, our review of the record in this case has shown that the District Court is to be commended, both for its patience and its persistence in examining the record to arrive at its ruling.

## I.

Donovan's arguments on appeal are essentially those he raised in the District Court, and fall into two categories. The first is based on procedural rules, and the second is based on substantive law. Donovan's procedural arguments assign error to the District Court's decisions to grant summary judgment in favor of Aldrich and deny summary judgment in favor of Donovan for the same reasons. According to Donovan, Aldrich's failure to file discovery responses within the time specified in Rule 36, M.R.Civ.P., resulted in Donovan's requests for admissions being deemed admitted. Donovan also invokes Rule 8, M.R.Civ.P., for the proposition that Aldrich's failure to respond to his first amended counterclaim means that the allegations of fraud found there are also deemed admitted. We disagree.

The District Court's Memorandum and Order notes that Aldrich's delay in responding to discovery was not the result of bad faith on Aldrich's part, which afforded the court discretion to allow the responses to be filed late. The court cited Heller v. Osburnsen (1973), 162 Mont. 182, 510 P.2d 13, as authority for its exercise of discretion. In Heller, this Court noted that the purpose of Rule 36, M.R.Civ.P., is to alleviate delay in trials by removing

4

uncontested issues; if no prejudice would ensue, a court could allow untimely filing in its discretion.

Aldrich's delay in filing its response was at least in part due to the fact that after this action began Aldrich's counsel moved to New York City. He was served there with Donovan's requests for admissions and interrogatories. According to the affidavit of the Vice President of Aldrich, he did not have knowledge of the requests until shortly before Aldrich's new counsel filed the response. The record does not disclose any bad faith on Aldrich's part, and given the fact that Donovan received Aldrich's responses nearly a year before the court's Memorandum and Order was issued, Donovan was not prejudiced by the delay.

The discretion granted courts under Rule 36 in Heller applies with equal force to Donovan's Rule 8 argument regarding his amended counterclaim. In fact, the procedural rules relied on by Donovan, if enforced strictly, could have worked against him. Donovan's amended counterclaim was not filed until after Aldrich filed an answer to Donovan's original counterclaim. Because Aldrich had filed its answer to the original counterclaim, Donovan was required under Rule 15, M.R.Civ.P., to seek leave of court before filing his amendment. He did not do so until he filed the combined motion ruled on by the court in the Memorandum and Order appealed here. The court technically did not grant leave to file the amendment until it granted summary judgment in favor of Aldrich, thereby obviating the need for a response by Aldrich.

Moreover, most of the documents in this case were untimely filed. Strict construction of procedural rules could have resulted in judgment against Donovan for failure to file a timely response to Aldrich's complaints. The court's leniency allowed for consideration of the merits of

5

both Aldrich's claims and Donovan's counterclaims. Donovan therefore was not prejudiced by the court's exercise of discretion.

## II.

Donovan's substantive arguments first address his counterclaim, and then Aldrich's claim. Donovan's original counterclaim for breach of warranty alleged that certain vinyl siding he purchased from Aldrich was not fit for its intended purpose. After installation, the siding warped and blistered, requiring replacement. Donovan alleged the replacement costs as his economic loss. The District Court addressed this claim only briefly, because it found that Donovan had not shown damages. He had walked off the job by the time the siding was replaced; the contractor who took over the job purchased the replacement siding. On appeal, Donovan relies on his argument that the procedural rules discussed above rendered his requests for admissions and the allegations in his counterclaims deemed admitted, thereby proving his case. We have held Donovan's procedural arguments insufficient, and our review of the record shows the District Court to be correct. Donovan made no showing of damages to the District Court. We therefore affirm the District Court on this question.

Donovan's fraud claim alleged that two payments he made to Aldrich were not properly credited. In his briefs filed with the District Court, Donovan admits that the payments at first were credited, but alleges that these same amounts were later included in the lien filed by Aldrich against Graff. Donovan thus alleges that the statements of account sent to him by Aldrich were known by Aldrich to be misrepresentations, which Donovan relied on to his detriment by filing an action for labor and materials costs against Graff. The District Court held this claim insufficient, because the

6

"facts" alleged by Donovan (e.g., Aldrich's knowing misrepresentations) were mere conclusory statements rather than evidence. The court held that Donovan had presented virtually no evidence to support his claim, which therefore failed as a matter of law.

On appeal, Donovan again relies on allegations supposedly deemed admitted by the procedural rules discussed above to prove his case. We have held that these allegations were not deemed admitted, so this argument fails. However, even if the allegations in Donovan's fraud counterclaim were deemed admitted, his claim would fail.

The two payments at issue were in the approximate amounts of $500 and $2,300. The record shows that the first payment was credited to Donovan's note, and the second to Donovan's account for the Graff job. Donovan admitted in his briefs below that these credits were correct. The record also shows that when the payments were made, Donovan did in fact owe the money to Aldrich. The gravamen of Donovan's claim is that these amounts were included in Aldrich's lien against Graff, which somehow worked to Donovan's detriment in asserting his claim against Graff. We disagree.

First, no misrepresentations were made to Donovan regarding these payments. The sum sought by Aldrich on the note reflects credit for that payment, and no sum is sought for Graff materials charged to Donovan's account. Any misrepresentation that may have been made by Aldrich regarding amounts owed on the Graff job would have been made in its lien action against Graff.

Second, any reliance by Donovan on the credits shown in Aldrich's statements was irrelevant. The note at issue has nothing to do with the disputed Graff sums. The note was signed in July of 1984, and concerned amounts charged by Donovan prior to that date. The record, including the lien

filed by Aldrich against Graff, shows that Aldrich began supplying materials for the Graff job in September of 1984, two months after the note was signed. Donovan therefore could not have included the note payment in any claim against Graff. The record also shows that approximately $16,000 worth of materials were supplied by Aldrich for the Graff job. It would be illogical to assume that Donovan's decision to bring a claim against Graff for a remodeling job of this size turned on the $2,300 payment he made to Aldrich. While Donovan's action against Graff was the subject of arguments to the District Court in this case, the record does not show that the disputed $2,300 payment had anything to do with Donovan's failure to obtain judgment.

Donovan would have had to show nine separate elements to obtain a judgment for fraud. Selvidge v. McBean (Mont. 1988), 750 P.2d 429, 45 St.Rep. 168. The District Court correctly held that Donovan's arguments alleged conclusory statements rather than facts. Our review has also shown that the facts in the record do not support two key elements of fraud, misrepresentation and reliance. We therefore affirm the District Court on this question.

We now turn to the issue of Aldrich's entitlement to summary judgment for sums sought on Donovan's note and charge account. Only two of Donovan's arguments remain to be addressed at this point, the others having been discussed above. On the question of the note, Donovan admits he executed the note, but asserts that he did so under economic duress. He alleges duress in that Aldrich would not extend him further credit unless he signed the note.

A claim of economic duress requires a showing that the contract at issue was made under circumstances evincing a lack of free will on the part of the contracting parties. It is not sufficient to show that consent was secured by the

8

pressure of financial circumstances, or that one of the parties merely insisted on its legal right. Shiplet v. First Security Bank of Livingston (Mont. 1988), 762 P.2d 242, 45 St.Rep. 1816. The note at issue here evidenced an existing debt owed by Donovan to Aldrich. Aldrich did not force Donovan to incur the debt. Aldrich had a legal right to require security of some sort before extending further credit to Donovan. He was therefore "pressured" only by his need for further credit, not by any duress imposed by Aldrich. Aldrich was therefore entitled to summary judgment on the note.

Donovan argues that the amount sought on his account had been paid in full. Aldrich submitted account statements showing the amount it sought as being owed by Donovan on two specific jobs. Donovan's argument alleged that he had "paid in full", but listed two different jobs. Donovan never denied owing money for the two jobs listed by Aldrich. Aldrich was therefore entitled to summary judgment as to these amounts as well. We affirm the judgment of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____
Justices

9