No. 98-305

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 252

296 Mont. 267

989 P.2d 309

NANCY LANE,

Plaintiff and Appellant

v.

FARMERS UNION INSURANCE,

Defendant, Third Party Plaintiff

and Respondent

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

**For Appellant:**

Kenneth D. Peterson, Peterson and Schofield, Billings, Montana

**For Respondent:**

James R. Halverson, Herndon, Sweeney & Halverson, Billings, Montana

Submitted on Briefs: March 11, 1999

No

Decided: October 21, 1999

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1.Plaintiff and Appellant Nancy Lane (Lane) appeals from summary judgment granted by the Thirteenth Judicial District Court, Yellowstone County. In her complaint, Lane alleged that the Defendant and Respondent, Farmers Union Insurance (Farmers), improperly denied coverage following a fire that severely damaged Lane's home, under a policy that named both her, and her husband Brad, as insureds. The District Court found that the intentional acts of Brad Lane, as decreed by a prior default judgment, precluded Lane's recovery under the express terms of her policy with Farmers. Lane's motions to set aside the judgment, pursuant to Rules 59(g) and 60(b), M.R.Civ.P., were deemed denied by the District Court. We reverse and remand.**

**¶2.Of the two issues raised by Lane, we find the following dispositive:**

Did the District Court err in granting summary judgment to Farmers based on the conclusion that a default judgment, which decreed Brad Lane had committed certain acts, could as a matter of law bar Nancy Lane's loss claim under her policy with Farmers?

### Background Facts

**¶3.On February 17, 1995, a house owned by Lane on Box Elder Creek Road in Billings, Montana, was severely damaged by a fire. After the fire, Lane and her husband, Brad, signed and submitted a claim for losses under their insurance policy with Farmers. Both were named insureds. The policy had become effective January 4, 1995, and had been canceled January 20, 1995, for the stated reason that "this risk no longer meets our underwriting requirements." The cancellation would have taken effect February 22, 1995.**

¶4.Farmers denied the claim, based on "gathered evidence," which allegedly demonstrated Brad intentionally set fire to the Lanes' house "with apparent knowledge by Nancy," and that Brad had also failed to disclose requested information regarding past insurance claims on the Lanes' policy application. Farmers claimed that either act barred recovery by an insured pursuant to express policy exclusions and conditions.

¶5.In support of these contentions, Farmers has asserted that Brad Lane "was investigated and prosecuted" for intentionally setting the fire, which it claims was "declared an arson." Farmers has further contended that the Lanes' policy application, bearing Brad's signature, demonstrated he concealed or provided false information. The focal point of this contention was Brad's response to the request "please list all losses during the past 5 years," to which he responded "none." This request, under "Prior Insurance Information," followed a request for the name of the Lanes' prior home owners insurance carrier. Brad provided the name of Trinity Universal of Kansas. Lane, in her deposition, admitted that she had filed a claim on her vehicle insurance approximately three years prior to the fire at the Box Elder Creek Road home. Farmers does not argue, nor does the record indicate, that the Lanes made any claims under their policy with Trinity.

¶6.Lane has never disputed that Brad was charged and prosecuted for arson. Rather, she has asserted throughout this litigation that Brad was never convicted. This assertion is not contradicted by any evidence found within the record. To the contrary, although Farmers has offered numerous conclusory allegations in its brief regarding the conduct of Lane and her husband dating back to the 1970s, it has not provided any further documentation to substantiate its claims beyond Lane's sworn deposition and the Lanes' policy application and agreement.

¶7.Also noteworthy is the uncontested assertion by Lane that she and Brad, although not legally separated, have not occupied the same home for much of their twenty-two-year marriage. In light of this, Lane states she was living and working in Glendive, located in Dawson County, at the time of the fire. Brad, on the other hand, was living in the Billings house at the time.

¶8.On February 14, 1997, Lane, proceeding *pro se*, brought suit against Farmers, seeking a declaratory judgment that Farmers had violated the terms of the insurance policy, and, in bad faith, had denied her claim. She asserted that she had complied

with all terms and conditions of the policy and that Farmers "knew" she was not responsible for the fire. Furthermore, she contended that $180,000 of the $220,000 claim for damaged or destroyed property belonged to her.

¶9.In response, Farmers filed an answer, a counterclaim, and a third-party complaint against Brad Lane. The third-party complaint alleged that Brad intentionally set the fire and committed "fraud, concealment, misrepresentation, [and] false swearing," when he failed to disclose requested information on the policy application. For this reason, Farmers averred in its counterclaim that Nancy, pursuant to express policy conditions and exclusions, was barred from recovery under the policy as well.

¶10.On July 28, 1997, Farmers initiated an entry of default against Brad Lane for his failure to answer or otherwise appear in response to the third-party complaint, which had been served July 7, 1997, after numerous failed attempts. (Meanwhile, Lane had timely answered Farmers' counterclaim against her, which had been served at her residence in Glendive on April 15, 1997.) A default judgment order was issued by the District Court on August 1, 1997. The order, prepared by counsel for Farmers and signed by the District Court, decreed that there was no coverage for the claims of Brad Lane "because of his fraud, concealment, misrepresentation, false swearing, and intentional setting of fire," and therefore Farmers had "no duty to pay any of the claims of Bradley Lane arising from the house fire."

¶11.On October 29, 1997, Farmers moved for summary judgment. In support of its motion, Farmers contended that the deemed admissions decreed in the default judgment order resolved all material facts regarding the rejected claim under the terms of the policy.

¶12.Lane did not file a brief or appear at the January 30, 1998 summary judgment hearing. At the time, she was in the process of securing representation. It is unclear from the record to what extent the move from *pro se* to hiring legal counsel had on her failure to file a brief or appear. Nevertheless, summary judgment for Farmers was granted, and an order, again prepared by counsel for Farmers, was signed the day of the hearing. The District Court's memorandum declared that it was "undisputed that . . . Brad Lane intentionally caused the fire . . ." Therefore, the order found that there was "no coverage under the Farmers policy for Nancy Lane's claims or losses arising from the February 17, 1995 fire . . ."

¶13. Subsequently, counsel for Lane moved the District Court, pursuant to Rules 59 (g) and 60(b), to amend the judgment, arguing that Lane had difficulty obtaining representation, and could not effectively respond to Farmers' summary judgment. This motion was deemed denied as of April 8, 1998. Lane appealed both the granting of summary judgment in favor of Farmers and the denial of her post-judgment motions.

## Standard of Review

¶14. This Court reviews an order granting summary judgment under Rule 56, M.R. Civ.P. by utilizing the same criteria as the district court. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. Summary judgment is a remedy which should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), M.R.Civ.P. The procedure should never be substituted for trial if a material factual controversy exists. *See Payne Realty v. First Sec. Bank* (1992), 256 Mont. 19, 24, 844 P.2d 90, 93.

¶15. When we review a district court's conclusions of law, our standard of review is plenary and we must determine whether the court's conclusions are correct as a matter of law. *See Hicklin v. CSC Logic, Inc.* (1997), 283 Mont. 298, 301, 940 P.2d 447, 449.

¶16. Under our *de novo* review, if we find any material facts remain in dispute regarding the relevant acts committed by Brad Lane, then summary judgment was improper. Further, if the District Court found that Farmers was entitled to judgment as a matter of law, and the legal basis for this conclusion was incorrect, summary judgment was likewise improper.

## Discussion

Did the District Court err in granting summary judgment to Farmers based on the conclusion that a default judgment, which decreed Brad Lane had committed certain acts, could as a matter of law bar Nancy Lane's loss claim under her policy with Farmers?

¶17. Farmers asserts that Brad Lane intentionally set fire to the Lane home covered

by the Lanes' policy with Farmers. This assertion is sustained, Farmers argues, by the District Court's default judgment order, which decreed Brad Lane committed the act, as well as the alleged acts of fraud, concealment, misrepresentation, and false swearing. Consequently, Farmers maintains, the default judgment was a proper basis for summary judgment in that it conclusively resolved any dispute over whether Brad Lane committed the alleged acts.

¶18.The District Court agreed in granting Farmers' motion for summary judgment against Nancy Lane. The District Court determined that the default judgment order of August 1, 1997, undisputedly "established that Brad Lane intentionally set the February 17, 1995 fire at the Lanes' home at 1015 Box Elder Creek Road." The District Court reasoned that under this Court's decision in *Woodhouse v. Farmers Union Mutual Ins. Co.* (1990), 241 Mont. 69, 785 P.2d 192, a policy provision is determinative where it "clearly and unequivocally states that a loss caused by an intentional act of an insured party bars coverage." *Woodhouse*, 241 Mont. at 72, 785 P.2d at 194. The relevant portions of Farmers' policy state:

> 1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> . . .
>
> h. **Intentional Loss**, meaning any loss arising out of any act committed:
>
> (1) by or at the direction of an insured; and
>
> (2) with the intent to cause a loss.
>
> . . .
>
> 2. **Concealment or fraud**. The entire policy will be void if, whether before or after a loss, an **insured** has:
>
> a. intentionally concealed or misrepresented any material fact circumstance; or
>
> b. engaged in fraudulent conduct; or

c. made false statements relating to this insurance.

The District Court determined, as a matter of law, that there was no coverage under the policy for Nancy Lane's claims or losses arising from the Box Elder Creek Road fire.

¶19.Our analysis of this issue involves two distinct but intertwined strands. The first involves a determination of precisely what may be "deemed admitted" when a default judgment is entered against a party for failure to answer or otherwise appear. The second is whether the doctrine of collateral estoppel precludes Lane from re-litigating the issue of Brad Lane's alleged acts which were decreed by the default judgment. We will address each sub-issue in order.

## 1. Admissions by Default

¶20.Lane argues that any deemed admission by her husband, Brad, pursuant to the default judgment entered against him, are not binding on her. Our review of this issue is accordingly narrowed to whether in this instance the allegations relevant to summary judgment in Farmers' third-party complaint were deemed admitted as a matter of law by Brad Lane.

¶21.As a general rule, under Rule 55, M.R.Civ.P., a default judgment based on one party's failure to answer under Rule 8, M.R.Civ.P., permits the non-defaulting party to assert that all factual allegations in the pleadings are deemed admitted in ascertaining liability. *See Wheat v. Safeway Stores, Inc.* (1965), 146 Mont. 105, 110, 404 P.2d 317, 319 (quoting from 2 Moore's Federal Practice, that "all averments of the complaint, other than those as to the amount of damage, will stand admitted unless the defendant answers . . ."). This general rule, in turn, is an exception to an overriding principle that cases are to be tried on the merits and judgments by default are not favored. *See Maulding v. Hardman* (1993), 257 Mont. 18, 23, 847 P.2d 292, 296.

¶22.Accordingly, Farmers argues that its assertions--that Brad Lane intentionally set fire to the Lane home, and committed fraud, concealment, misrepresentation and false swearing--have been procedurally transformed from pled allegations into legally proven facts pursuant to a valid default judgment. Consequently, the default judgment order serves as a proper basis for resolving all issues of material fact under

the summary judgment standard of review. Indeed, pursuant to this Court's holding in *Woodhouse*, if it can be shown that as a matter of law Brad Lane, as a named insured, intentionally set the fire, or provided false or misleading information on the policy application, then Farmers should rightfully be able to deny Nancy Lane's claim. *See Woodhouse*, 241 Mont. at 72, 785 P.2d at 194.

¶23.Although we have not squarely addressed an identical set of procedural circumstances, we have in the past formulated guiding principles sufficient to address this issue. We have held that the deemed admissions resulting from one party's failure to respond to an amended counterclaim, due to a technicality, could not sustain a claim for fraud in a subsequent motion for summary judgment. *See Aldrich & Co. v. Donovan* (1989), 238 Mont. 431, 778 P.2d 397.

¶24.*Aldrich* involved a dispute between a contractor, Donovan, and a building supplies retailer, Aldrich. Similar to Lane here, Aldrich initiated the action. Donovan, similar to Farmers, filed an answer which included a counterclaim alleging fraud. On appeal, Donovan argued that "the allegations in his counterclaims [should be] deemed admitted, thereby proving his case [for the purpose of summary judgment]." *Aldrich*, 238 Mont. at 436, 778 P.2d at 400. We affirmed the District Court's granting summary judgment for Aldrich, and agreed that Donovan's claim was:

> [I]nsufficient, because the "facts" alleged by Donovan . . . were mere conclusory statements rather than evidence. The [district] court held that Donovan had presented virtually no evidence to support his claim, which therefore failed as a matter of law.
>
> On appeal Donovan again relies on allegations supposedly deemed admitted by the procedural rules . . . to prove his case. We have held that these allegations were not deemed admitted, so this argument fails.

*Aldrich*, 238 Mont. at 436, 778 P.2d at 400. *See also Maulding v. Hardman* (1993), 257 Mont. 18, 26-27, 847 P.2d 292, 298 (holding that allegations in the plaintiff's complaint based upon "information and belief," which were deemed admitted following the defendant's failure to answer, were "unsubstantiated," and could not support an award of punitive damages).

¶25.Additionally, in construing Rule 8, M.R.Civ.P., in conjunction with default judgments pursuant to Rule 55, M.R.Civ.P., we have often turned to Moore's Federal Practice for guidance. *See*, *e.g.*, *McClurg v. Flathead County Comm'rs* (1978), 179 Mont. 518, 519-20, 587 P.2d 415, 416 (holding that a Rule 8 default is not appealable until a final judgment is entered, and citing 6 Moore's Federal Practice § 55.10 (2d ed. 1966) as authority). Accordingly, we adopt the general rule here that although "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted . . . . plaintiff's conclusions of law are not deemed established." 10 Moore's Federal Practice § 55.12(1) (3d ed. 1999). *See also* 10A Charles Alan Wright et al., Federal Practice and Procedure, Civil 3d § 2688 at 63 (1998) (stating "a party in default does not admit mere conclusions of law").

¶26.A review of case law following Moore's rule on this issue reveals that the argument that legal conclusions may be deemed admitted pursuant to a default judgment runs contrary not only to the foregoing principles espoused by this Court, but to the spirit and intent of the Rules of Civil Procedure employed by the courts in this country dating back to at least 1885. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank* (5th Cir. 1975), 515 F.2d 1200, 1206 (referring to *Thomson v. Wooster* (1885) 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105, as the "venerable but still definitive case" and relying on the same for the proposition that a party against whom a default judgment is entered is not held to admit facts that are not well-pleaded or to admit conclusions of law). *See also Skanchy v. Calcados Ortope Sa* (Utah 1998) 952 P.2d 1071, 1076 (stating that a default judgment is valid only if the well-pleaded facts show that the plaintiff is entitled to judgment as a matter of law); *Moran v. Moran* (Ariz. App. 1996), 933 P.2d 1207, 1214 (concluding that a defaulting defendant is not held to have admitted conclusions of law); *Danning v. Lavine* (9th Cir. 1978), 572 F.2d 1386, 1388 (following *Nishimatsu* and citing *Thomson*); *Trans World Airlines, Inc. v. Hughes* (D.C.N.Y. 1969), 308 F.Supp. 679, 683 *rev'd on other grounds* (stating rule derived from *Thomson* that allegations which are not well-pleaded include "allegations . . . which are not susceptible of proof by legitimate evidence").

¶27.Based on the foregoing, we hold that the determination of whether a person has committed any one of the acts of *arson*, *fraud, concealment*, *misrepresentation* or *false swearing*--each subject to criminal or civil liability--is a conclusion of law that can only be reached after applying particular rules of law to specific findings of fact. These acts cannot, as a matter of law, be "deemed admitted" pursuant to an otherwise valid default judgment, merely because a party failed to answer or

otherwise appear.

¶28.Having reached this holding, we now turn to the record, pursuant to our *de novo* review, to determine whether any legal conclusions were "deemed admitted," and if so, whether they were supported by any legitimate evidence.

¶29.While it is uncontested that police investigated Brad Lane following the February 17, 1995 fire, the allegation that he *intentionally* set the fire is not only fervently contested by Lane, but Farmers has not provided any evidence to substantiate this claim.

¶30.Normally, the intent to commit an act is a question of fact. *See*, *e.g.*, *State v. Kester* (1986), 220 Mont. 41, 45, 713 P.2d 537, 540 (stating that intent may be inferred from substantial evidence of defendant's acts). Thus, the District Court might have concluded that the evidence of Brad Lane's activities prior to the fire created the inference that he *intentionally* set the fire, satisfying Farmers' no-intentional-act policy provision. In other words, if the uncontested substantial evidence showed that Brad Lane set the fire, then factual allegations of his state of mind may not necessarily be legal conclusions, and, subsequently, could be held as deemed admitted by a default judgment. Here, however, the default and summary judgments were not based on *any* evidence that Brad committed the act of setting the fire, let alone raise an inference as to his state of mind.

¶31.Furthermore, although Farmers did not allege in its complaint or in its summary judgment brief that Brad Lane committed the criminal act of *arson*, which would have been on its face a legal conclusion, Farmers has nevertheless claimed in its brief to this Court that the "fire was declared an *arson*,"and "an *arson* fire [was] caused by [Lane's] husband," and the fire was "a classic *arson* fire." In either respect, whether Brad Lane committed arson, as defined under § 45-6-103, MCA, or "intentionally" set the fire, we conclude that the record in its entirety simply does not provide sufficient, legitimate evidence to support either allegation, both of which, in the absence of any factual underpinning, are nothing more than conclusions of law. We therefore hold it was incorrect to find that as a matter of law Brad Lane admitted to setting fire to the Lanes' home based solely on the legal conclusions alleged in Farmers' pleadings and subsequently decreed in the default judgment order.

¶32.We reach the same conclusion in our analysis of the allegations stemming from Brad Lane's response to requested information on Farmers' policy application. The exhibits within the record, offered by Farmers, show that Trinity Universal of Kansas, which had previously insured Lane's home, canceled its policy due to an adverse credit report. The exhibits further show that Farmers was aware of this fact in accepting the Lanes' application because Brad Lane provided this information. When requested to name the Lanes' prior home insurance carrier, Brad provided the name Trinity Universal of Kansas. Under the following request--loss history for the past five years--he listed "none." Elsewhere on the application, Brad was similarly requested to provide information pertaining to loss due to "fire, theft or vandalism . . . within the past 5 years." Again, he responded by circling "no." It is not clear whether these requests pertained to the prior carrier, Trinity, or to all insurance carriers--home, auto, etc.--on which both he and Nancy Lane may have made claims.

¶33.Even taking all of Farmers' allegations of the Lanes' past insurance claims as true--however irrelevant such allegations may be to this particular fire loss claim--the record offers no indication that Brad Lane's responses in this instance were not truthful, or intentionally withheld information, or, for that matter, that other carriers had ever denied coverage or canceled a policy due to misrepresentations of any kind. Surely, Farmers need not be reminded of the "reasonable consumer" standard for construing insurance documents. *See Stutzman v. Safeco Ins. Co. of America* (1997), 284 Mont. 372, 379-80, 945 P.2d 32, 36 (concluding that the "average consumer" of insurance would interpret the term "relative" to include his or her spouse). Or, that ambiguities in the language of the contracts will be construed against the insurer. *See Wendell v. State Farm Mut. Auto. Ins. Co.* (1999), 1999 MT 17, ¶ 14, 293 Mont. 140, ¶ 14, 974 P.2d 623, ¶ 14. *See also Nishimatsu Constr. Co. v. Houston Nat'l Bank* (5th Cir. 1975), 515 F.2d 1200, 1206-07 (stating that where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control). Accordingly, we hold that in this instance the allegations of "fraud, concealment, misrepresentation and false swearing" are conclusory statements of law unsupported by any legitimate evidence in the record, and therefore were not deemed admitted by Brad Lane pursuant to the default judgment.

¶34.In sum, we hold that under the foregoing analysis, the relevant averments in Farmers third-party complaint were conclusions of law that cannot, as a matter of

law, be held against Brad Lane, or any other party, as an admission of any of the alleged acts relevant to Farmers' motion for summary judgment. We conclude that the District Court relied exclusively on these averments in issuing its default decree, and then in finding no genuine issues of material fact remained in dispute. We hold, therefore, that summary judgment was improper in that material facts remain in dispute, and judgment in favor of Farmers was incorrect as a matter of law.

## 2. Collateral Estoppel

¶35.On appeal, Lane argues that the default judgment against Brad has no collateral estoppel effect in her claim against Farmers. In other words, Lane argues that she cannot be precluded, as a matter of law, from litigating the issue of whether Brad committed the alleged acts as decreed by the default judgment. In response, Farmers cites the collateral estoppel rule found in *Aetna Life and Casualty Ins. Co. v. Johnson* (1984), 207 Mont. 409, 413, 673 P.2d 1277, 1279, in arguing that Lane cannot be "allowed to escape the effects of valid judgments," yet the doctrine "does not apply to this case," because the default judgment was not a "prior adjudication."

¶36.We conclude that the arguments set forth by both parties on this issue are persuasive. As a matter of law, we hold that the doctrine of collateral estoppel does not apply in this case, following the general rule that a default judgment generally carries no collateral estoppel effect. *See* 10 Moore's Federal Practice § 55.50(2)(a) (3d ed. 1999) (stating that "under most circumstances, courts have held that a default judgment has no collateral estoppel effect"); Restatement (Second) of Judgments § 27 cmt. e (1982) (stating that "none of the issues is actually litigated" in the cases where judgment is entered by "confession, consent, or default").

¶37.In reaching this holding we note that collateral estoppel, an affirmative defense, must be set forth affirmatively in a party's responsive pleading pursuant to Rule 8(c), M.R.Civ.P. Accordingly, the defense was neither available to Farmers, which did not plead it in its answer, nor factored into the District Court's summary judgment order. We address the estoppel doctrine here, on appeal, because it was addressed by both parties pursuant to Lane's motions to set aside the District Court's judgment; it is inherent to the legal consequences of a valid default judgment; and, upon remand, pursuant to Rules 15(a) and (b), M.R.Civ.P., may appear yet again in this litigation.

¶38.Collateral estoppel prevents re-litigation of a particular issue or determinative

fact which was actually or necessarily decided in a prior action. *See Boyd v. First Interstate Bank* (1992), 253 Mont. 214, 218, 833 P.2d 149, 151. In *Aetna Life*, we adopted a three-part test for determining whether collateral estoppel applied: (1) was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) was there a final judgment on the merits? (3) was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? *Aetna*, 207 Mont. at 413, 673 P.2d at 1279. We held that "collateral estoppel will bar litigation of an issue in a *civil trial* that has previously been litigated in a *criminal trial* when the requirements . . . have been met." *Aetna*, 207 Mont. at 414, 673 P.2d at 1280 (emphasis added).

¶39.We have since broadened the application of this doctrine to all cases in which collateral estoppel is at issue--namely, in any adjudication where a final judgment was rendered on the merits. *See*, *e.g.*, *In re Marriage of Holland* (1986), 224 Mont. 414, 416, 730 P.2d 410, 412 (holding that a parent who was delinquent in making child support payments was estopped from contesting paternity which had been previously adjudicated during a marriage dissolution); *Aetna Life Ins. Co. v. McElvain* (1986), 221 Mont. 138, 146-47, 717 P.2d 1081, 1086 (holding adjudication in South Dakota proceedings provided valid issue preclusion in Montana case between the same parties).

¶40.Most relevant to our discussion here is the test's second prong, whether the default judgment serves as a final judgment on the merits, which could conceivably preclude Lane from contesting whether Brad Lane had committed the alleged acts. We hold it does not.

¶41.To determine whether a final judgment on the merits has been reached, we look to see if the issue was "actually litigated and adjudged as shown on the face of the judgment." *See Butler v. Brownlee* (1969), 152 Mont. 453, 457, 451 P.2d 836, 838. This analysis requires two things: first, that the issue was effectively raised in the pleadings or through development of the evidence and argument at trial or on motion; and, second, that the losing party had a "full and fair opportunity" procedurally, substantively, and evidentially to contest the issue in a prior proceeding. *In re Daily* (9th Cir. 1995), 47 F.3d 365, 369; *Bush v. Balfour Beatty Bahamas, Ltd.* (11th Cir. 1995), 62 F.3d 1319, 1324-25 (finding *Daily* persuasive and stating two-part rule); *Rafanelli v. Dale* (1998), 1998 MT 331, ¶ 18, 292 Mont. 277, ¶ 18, 971 P.2d 371, ¶ 18 (concluding that collateral estoppel applied to the purported

existence of an agreement where the "issue was fully litigated by counsel and deliberately considered by the court in its opinion"). *See also* Restatement (Second) of Judgments § 27 cmt. e (1982) (stating that an issue is not actually litigated "if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading").

¶42.Based on the foregoing, we conclude that Lane, as the non-prevailing party, has not been afforded a full and fair opportunity to procedurally, substantively, and evidentially contest the relevant issues pertaining to any of Brad Lane's acts that could, conceivably, prevent her recovery under her policy with Farmers. As concluded above, the default judgment merely restated the conclusory averments found in Farmers' pleadings as proven facts, and in no sense were these relevant issues "actually litigated."

¶43.Thus, the second question of the collateral estoppel test, *was there a final judgment on the merits?* cannot be answered affirmatively. Therefore, we hold that Lane cannot be precluded under the doctrine of collateral estoppel from litigating any issues pertaining to whether Brad Lane committed the alleged acts decreed by the default judgment.

¶44.Accordingly, the order of the District Court is reversed and this case is remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART