**In re Richard MORRIS, Debtor.**

**Richard S. Taub, Plaintiff,**

v.

**Richard Morris, Defendant.**

Bankruptcy No. 99–B–43891SMB, Adversary No. 99–8537A.

United States Bankruptcy Court, S.D. New York.

Aug. 24, 2000.

Carol Lilienfeld, New York City, for Plaintiff.

Heller & Rosenberg, P.C. (Craig S. Heller, of counsel), Garden City, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO VACATE JUDGMENT DISMISSING COMPLAINT

STUART M. BERNSTEIN, Chief Judge.

This case illustrates the risk of relying exclusively on collateral estoppel in a dischargeability proceeding. Prior to bankruptcy, the plaintiff's assignor recovered a default judgment against the defendant and debtor, Richard Morris ("Morris"). Following bankruptcy, the plaintiff, Richard S. Taub ("Taub"), commenced this adversary proceeding seeking a determination that the default judgment was not dischargeable under § 523(a)(2)(A) of the Bankruptcy Code.[1] Following the close of

---

1. In some of his submissions, including the memorandum of law submitted in support of the pending motion, Taub cites § 523(a)(4) together with § 523(a)(2)(A) as the basis for his claim. (*Memorandum of Law In Support of Taub's Post Trial Motion*, undated, at 2, 6.) It is clear, however, that the reference to § 523(a)(4) is a mistake since he continually states that his claim is based on fraud, the only exception he discusses. Hence, only § 523(a)(2)(A) is germane.

his proof at trial, I dismissed Taub's action for failure to establish a *prima facie* case. Taub now moves for an order vacating that judgment and reopening the proof, but his motion is denied.

## BACKGROUND

The facts are taken from the complaint filed by Taub's assignor in Montana state court (the "Montana Complaint"). In 1988, Morris' affiliate, Casing Recovery Services, Inc. ("CRS"), contracted with ANR Production Company to plug nineteen wells located in Montana. (Montana Complaint ¶ 3.) CRS agreed to sell the tubing, casings and rods pulled from the wells to Liberty Pipe Company ("Liberty"). (*Id.* ¶ 5.) When CRS began to experience financial problems rendering it unable to fulfill its contract, Liberty advanced approximately $65,000.00. (*Id.* ¶¶ 7–9.) Morris agreed to use the advance to pay six creditors whose equipment or services were needed to complete the contract. (*Id.* ¶ 7; Ex. A.)

### A. State Court Proceedings

After CRS failed to perform the plugging contract, deliver the equipment to Liberty or repay the advance, Liberty sued CRS, Morris, and Steve Schrader, a CRS agent, in Montana state court. The Montana Complaint alleged claims denominated as breach of contract and bad faith, conversion, fraud, breach of the implied covenant of good faith and fair dealing and punitive damages. Morris moved unsuccessfully to dismiss, and then failed to defend the Montana action on the merits. As a result, the Montana court entered a default judgment in favor of Liberty on November 6, 1989 (the "Montana Judgment") against Morris and CRS in the sum of $65,244.90. The Montana court did not award any punitive damages.

Liberty assigned the Montana Judgment to Taub in July 1997. Taub then commenced an action in New York, pursuant to N.Y. C.P.L.R. § 3213 (McKinney 1992)("CPLR") for the purpose of converting the Montana Judgment into a New York judgment. (*See* Order of Hon. Elliot Wilk, signed March 26, 1998.) On or about August 26, 1998, the New York Supreme Court entered a default judgment in the sum of $125,532.90 (the "New York Judgment").[2] Morris never appealed from or moved to vacate either judgment.

### B. The Bankruptcy Proceedings

After Morris filed this chapter 7 case, Taub objected to the dischargeability of his claim. The numerous attorney errors associated with the prosecution of the objection shed light on the present invocation of "excusable neglect." To begin with, Taub initiated this proceeding by filing a motion instead of commencing an adversary proceeding as required by Fed R. Bankr.P. 7001(6). I granted Morris' motion to dismiss based on Taub's failure to file a complaint, state a claim for relief under Fed.R.Civ.P. 12(b)(6) or comply with the requirements for pleading fraud under Fed.R.Civ.P. 9(b). Taub was granted leave to replead, and filed an amended complaint on October 27, 1999 (the "Amended Complaint") which by and large reiterated the allegations in the Montana Complaint.

By motion dated October 27, 1999, Taub moved for judgment on the Amended Complaint, based upon the collateral estoppel effect of the New York Judgment. However, he failed to identify the procedural basis for his motion, or consider the collateral estoppel effect of the Montana Judgment under Montana law.[3] I denied the motion,[4] and advised the parties to

---

2. The higher amount represents interest accruing on the Montana Judgment and the costs taxed by the New York court.

3. The procedural basis was important. For example, to the extent that Taub was moving for summary judgment, he completely ignored the requirement in Local Bankruptcy Rule 7056–1 to submit a statement of undisputed facts.

4. I also denied Morris' cross-motion to dismiss the Amended Complaint.

prepare for trial which was scheduled to begin on Tuesday, March 7, 2000.[5]

On the Thursday or Friday before the trial, Taub's trial counsel, an associate of Taub's counsel of record, called my chambers to request an adjournment *ex parte.* He claimed to be ill, and was told that he would have to produce a doctor's note before the trial would be adjourned. He never did. Instead, Carol Lilienfeld, Esq., Taub's attorney of record, appeared and tried the case. She called Morris, showed him the Montana Complaint which was marked for identification as Plaintiff's Exhibit 5, and asked him several general questions. (Trial Transcript, dated Mar. 7, 2000 ("3/7 Tr."), at 25–27.) After some cross-examination, Morris stepped down, Taub rested, and Ms. Lilienfeld made a "motion to dismiss" [*sic* ].[6] (3/8 Tr. at 35–36). Reminding her that Morris had not yet presented his defense, I denied the motion, (*id.* at 36), and it was Morris' turn.

Morris immediately moved to dismiss the Amended Complaint based upon Taub's failure to prove a *prima facie* case. (*Id.*) Taub's counsel had never offered the Montana Complaint, the only proof on which Taub intended to rely, into evidence. Ms. Lilienfeld then made a futile effort to get it in. As an assignee of Liberty's claim, however, Taub could not authenticate the Montana Complaint. Hence, Ms. Lilienfeld could not get it into evidence, unless she had a certified copy.

Ms. Lilienfeld insisted that she had a certified copy; she just didn't have it with her and wasn't sure she could find it. She requested leave to obtain a another certified copy. (*Id.* at 37–38.) Morris objected, and I sustained the objection. Since it was undisputed that Taub could not prove his case without the Montana Complaint, I dismissed the Amended Complaint and di-

rected judgment in favor of the Morris. (*Id.* at 41–42.) After the judgment ("Judgment") was entered, Taub moved to vacate the Judgment, and in the same motion, asked for a determination that the New York Judgment was not dischargeable.

## DISCUSSION

Taub cites Fed.R.Civ.P. 59 as the predicate for the relief in his notice of motion, but his memorandum of law only discusses Rule 60. Granting relief under Rule 59 is committed to the discretion of the court. The Rule authorizes a court to alter or amend a judgment following a non-jury trial if there is a manifest mistake of fact or error of law, but the reasons for granting the motion must be substantial. 12 DANIEL R. COQUILLETTE, ET AL., MOORE'S FEDERAL PRACTICE § 59.13[3][a], at 59–87 (3rd ed. 2000)("MOORE'S"); *see Ball v. Interoceanica Corp.,* 71 F.3d 73, 76 (2d Cir.1995), *cert. denied,* 519 U.S. 863, 117 S.Ct. 169, 136 L.Ed.2d 111 (1996); *Griffin Industries, Inc. v. Petrojam, Ltd.,* 72 F.Supp.2d 365, 368 (S.D.N.Y.1999). Taub does not contend that I made erroneous findings of fact or conclusions of law, and concedes that his proof was insufficient without the Montana Complaint. Rather, he relies upon the doctrine of "excusable neglect" to reopen the record and offer the Montana Complaint into evidence. His motion, therefore, is more properly viewed under Rule 60(b).

Rule 60(b)(1) provides in relevant part that the court may relieve a party or his legal representative from a final judgment upon a showing of mistake, inadvertence, surprise, or excusable neglect. The movant must also show that he has a meritorious claim. This requirement ensures that vacating the judgment will not be an empty exercise. 12 MOORE'S § 60.24[1],

---

5. Taub filed one more motion, trying for the third time to obtain judgment as a matter of law without going to trial. The motion was returnable on March 8, 2000, one day *after* the trial. Under the circumstances, I declined to consider it.

6. I interpreted the request as one for a judgment on partial findings. *See* Fed.R.Civ.P. 52(c).

at 60–77. As with a motion under Rule 59, the decision to grant or deny a Rule 60(b) motion is committed to the discretion of the court. *See McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983).

## A. Excusable Neglect

■■ Rule 60 does not define "excusable neglect," but the Supreme Court's decision in *Pioneer Inv. Servs., Inc. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), provides guidance. *Canfield v. Van Atta Buick/GMC Truck, Inc.,* 127 F.3d 248, 249–50 (2d Cir.1997)(*Pioneer's* interpretation of "excusable neglect" applies to Fed.R.Civ.P. 60(b)(1)), *cert. denied,* 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 117 (1998); 12 MOORE'S § 60.41[1][a], at 60–83. "Neglect" encompasses inadvertence, carelessness, and mistake, 507 U.S. at 388, 113 S.Ct. 1489, and is not limited strictly to omissions caused by circumstances beyond the control of the movant. *Id.* at 392, 113 S.Ct. 1489 (footnote omitted). At bottom, the determination is an equitable one and the court must consider all relevant circumstances surrounding the party's omission. *Id.* at 395, 113 S.Ct. 1489.

■ Taub points to the upheaval in Ms. Lilienfeld's office as the basis for his motion. His trial counsel became ill. He was supposed to get a doctor's note and obtain an adjournment of the trial. For reasons never explained, he did neither. Ms. Lilienfeld—always the attorney of record—then had to come in at the eleventh hour, grab the file and try the case. The certified copy of the Montana Complaint which was once in the file inexplicably disappeared and could not be located in time to try the case. (*See* Affidavit of Carol Lilienfeld, sworn to Mar. 31, 2000 (the "Lilienfeld Affid."), at ¶ 4.) Having established law office failure, Taub argues, in substance, that he should not suffer for his attorney's negligence.

■ There are several reasons why this neglect is not "excusable neglect." Law office upheaval does not justify relieving the client of the consequences of his attorney's actions. *Pioneer,* 507 U.S. at 396, 113 S.Ct. 1489 ("clients must be held accountable for the acts and omissions of their attorneys"); *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Hence, proof of an attorney's negligence rarely establishes "excusable neglect" under Rule 60(b)(1). *Mason Tenders Dist. Council Welfare Fund v. M & M Contracting & Consulting,* 193 F.R.D. 112, 115 (S.D.N.Y.2000); *Cobos v. Adelphi Univ.,* 179 F.R.D. 381, 385 (E.D.N.Y.1998). Indeed, "[a]ny other notion would be wholly inconsistent with our system of representative litigation." *Link v. Wabash R.R. Co.,* 370 U.S. at 634, 82 S.Ct. 1386. Here, the trial miscue was one of many, and the lost exhibit was merely another blunder in a case that had more than its share.

Moreover, I question whether counsel ever had a certified copy of the Montana Complaint. In her moving affidavit, Ms. Lilienfeld stated that she discovered the certified copy was missing when she received the file the day before trial. (Lilienfeld Affid. at ¶ 4.) Yet when she moved for an adjournment at the start of the trial, she did not mention the missing certified copy. Instead, she argued that she needed more time to get and read the transcript of Morris' deposition. (*See* 3/7 Tr. at 3–4.) Even to this day she has not produced the certified copy she insisted she had but could not locate under the time constraints imposed by the trial.

In addition, she never provided evidence, in the form of a letter to the Montana clerk requesting a certified copy, or a receipt showing that one was sent or paid for. Her ailing associate never provided an affidavit attesting to his possession of a certified copy. Morris' counsel never saw a certified copy. I never saw a certified copy. Finally, Taub attached a copy of the Montana Complaint to several of his submissions during this action, but none was a duplicate of a certified copy.

In this regard, Ms. Lilienfeld's representation that she needed or used the Montana Complaint to obtain the New York Judgment makes no sense. Article 54 of the CPLR governs the enforcement of judgments entitled to full faith and credit, such as the Montana Judgment. It offers three alternatives depending on the nature of the foreign judgment. If the judgment was not obtained by default or by a confession of judgment, the judgment creditor may file an authenticated copy in New York state court, CPLR § 5402(a), and give notice of the filing to the judgment debtor. *Id.* § 5403. Alternatively, the judgment creditor may commence a plenary action or move for summary judgment in lieu of complaint. *Id.* § 5406. Since the Montana Judgment was obtained on default, registration was not available, and Taub moved for summary judgment in lieu of complaint pursuant to CPLR § 3213.

The Montana Complaint would be irrelevant regardless of which procedure was followed; the Montana Judgment is the critical document that formed the basis of the CPLR § 3213 action/motion. Furthermore, counsel failed to offer any evidence that she used a copy of the Montana Complaint, much less a certified copy, in the New York proceedings. She never produced a copy obtained from the state court files or her own files. In short, although Taub has offered many excuses for failing to produce a certified copy of the Montana Complaint at trial, none are credible nor constitute "excusable neglect."

**B. Meritorious Claim**

 Even if Taub had shown "excusable neglect," he has not shown a meritorious claim under § 523(a)(2)(A). Proving his claim depends on his ability to use the allegations in the Montana Complaint, and this, in turn, depends on the preclusive effect of the Montana Judgment.[7] A fed-eral court, including a bankruptcy court, must accord a state court judgment the same preclusive effect it would be accorded by the rendering state. *See New York v. Sokol (In re Sokol),* 113 F.3d 303, 306 (2d Cir.1997); *Burgos v. Hopkins,* 14 F.3d 787 (2d Cir.1994); *Kelleran v. Andrijevic,* 825 F.2d 692, 693 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); *Nissan et al. v. Weiss (In re Weiss),* 235 B.R. 349, 354 (Bankr. S.D.N.Y.1999).

 Focusing then on the Montana Judgment and the Montana Complaint, Taub's claim fails for two reasons: (1) the Montana Judgment is not entitled to collateral estoppel effect; and (2) even if it were, the allegations in the Montana Complaint do not establish a non-dischargeability claim under § 523(a)(2)(A). Under Montana law, the party invoking collateral estoppel must satisfy three elements: (1) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (2) the prior adjudication must be a final judgment on the merits; and (3) the party against whom collateral estoppel is invoked must have been a party or in privity with a party to the prior adjudication. *Lane v. Farmers Union Ins.,* 296 Mont. 267, 989 P.2d 309, 316 (1999); *Aetna Life and Casualty Ins. Co. v. Johnson,* 207 Mont. 409, 673 P.2d 1277, 1279–80 (1984). To be a final judgment under the second prong, the issue must have been "actually litigated and adjudged as shown by the face of the judgment." *Lane v. Farmers Union Ins.,* 989 P.2d at 317 (internal quotation marks omitted). In the case of a default judgment, the issues are not actually litigated, and accordingly, "a default judgment generally carries no collateral estoppel effect." *Id.* at 316; *accord* RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. e (1982)(collateral estoppel does not apply to

---

7. Taub's also relies on the supposed collateral estoppel effect of the New York Judgment. The New York Judgment, however, simply establishes that Taub obtained a Montana judgment, but does not say or imply anything about the underlying claim. Furthermore, Taub never offered the New York complaint into evidence. Hence, the New York Judgment is immaterial to this proceeding.

a default judgment because the issues are not "actually litigated").

■ The cases cited by Taub in support of the applicability of collateral estoppel are inapposite. *Lindsey v. Keenan, Andrews & Allred,* 118 Mont. 312, 165 P.2d 804 (1946), did not involve either a default judgment or collateral estoppel. Rather, the case concerned an appeal from a judgment dismissing a complaint for failure to state a cause of action.[8] *Greenwood v. Steve Nelson Trucking, Inc.,* 270 Mont. 216, 890 P.2d 765 (1995), and *Loney v. Milodragovich, Dale & Dye, P.C.,* 273 Mont. 506, 905 P.2d 158 (1995), dealt with the applicability of *res judicata* to a default judgment, and did not involve collateral estoppel. It is well-settled, however, that while *res judicata* applies to default judgments, collateral estoppel does not. 10 MOORE'S § 55.50[2][a], at 55–67 to 55–68. Accordingly, the Montana Judgment does not get collateral estoppel effect in this non-dischargeability proceeding.

If the Montana Judgment is assumed to have collateral estoppel effect, and the well-pleaded allegations in the Montana Complaint are deemed admitted, *see Lane v. Farmers Union Insurance,* 989 P.2d at 316(conclusions of law alleged in a pleading cannot be deemed admitted); *Aldrich & Co. v. Donovan,* 238 Mont. 431, 778 P.2d 397, 400 (1989) (conclusory allegations are not deemed admitted where no evidence is offered to support the claim); *Maulding v. Hardman,* 257 Mont. 18, 847 P.2d 292, 298 (1993)(allegations in complaint which are unsubstantiated or made upon information and belief are not deemed admitted), the ultimate conclusion doesn't change. In construing the elements of § 523(a)(2)(A), we look to the common law of torts, as embodied in the RESTATEMENT (SECOND) OF TORTS ("RESTATEMENT"). *Field v. Mans,* 516 U.S. 59, 70, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *Palmacci v.*

*Umpierrez,* 121 F.3d 781, 786 (1st Cir. 1997); *Apte v. Japra (In re Apte),* 96 F.3d 1319, 1324 (9th Cir.1996); *Weiss v. Alicea (In re Alicea),* 230 B.R. 492, 500 (Bankr. S.D.N.Y.1999). Under section 525 of the RESTATEMENT, the elements of common law fraud are (1) a misrepresentation, (2) fraudulent intent, or *scienter,* (3) intent to induce reliance, (4) justifiable reliance and (5) damage. *Accord Palmacci v. Umpierrez,* 121 F.3d at 786; *In re Alicea,* 230 B.R. at 500.

■ Turning to the second element, a misrepresentation is made with fraudulent intent if the maker knows or believes that his statements are false. RESTATEMENT § 526;[9] *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 276 (2d Cir.1992). Accordingly, non-dischargeability under § 523(a)(2)(A) requires a finding of actual or positive fraud as opposed to fraud implied by law. *Palmacci v. Umpierrez,* 121 F.3d at 788; *In re Alicea,* 230 B.R. at 500; *see* 124 Cong. Rec. H11096 (daily ed. Sept. 28, 1978)(statement of Rep. Edwards); 124 Cong. Rec. S17412 (daily ed. Oct. 6, 1978)(statement of Sen. DeConcini). The party asserting nondischargeability must prove an actual intent to mislead; proof of mere negligence is not enough because the " 'dumb but honest' defendant does not satisfy the test of *scienter.*" *Palmacci v. Umpierrez,* 121 F.3d at 788; *accord* RESTATEMENT § 526 cmt. d (1965)("The fact that the misrepresentation is one that a man of ordinary care and intelligence in the maker's situation would have recognized as false is not enough to impose liability upon the maker for a fraudulent misrepresentation under the rule stated in this Section, but it is evidence from which his lack of honest belief may be inferred.")

The fraudulent intent allegation in the Montana Complaint does not meet this

---

8. Taub's memorandum does not identify the portion of the opinion that he thinks supports his argument.

9. Under RESTATEMENT § 526, fraudulent intent also includes a misrepresentation made without confidence in its accuracy or without any basis.

standard. The Montana Complaint, in ¶ 23, states that Morris "knew, or should have known through the exercise of reasonable diligence" that the various misrepresentations identified in the Montana Complaint were false. "Should know" indicates that the actor was under a duty to exercise reasonable diligence to determine a fact, and had he properly performed his duty, he would have done so. RESTATEMENT § 12 cmt. a (1965). We are concerned, however, with what the debtor actually knew and not with what he should have known. *Citibank (S. Dakota) N.A. v. Michel,* 220 B.R. 603, 606 (N.D.Ill.1998). One who makes a representation that he "should know" is false may be negligent but he has not acted with fraudulent intent, or met the actual fraud requirement of § 523(a)(2)(A). *Palmacci v. Umpierrez,* 121 F.3d at 788; *AT & T Universal Card Servs. Corp. v. Searle,* 223 B.R. 384, 390 (D.Mass.1998). Leaving aside the adverb "fraudulently" which represents a conclusion of law,[10] paragraph 23 admits of the possibility that Morris made the misrepresentations negligently rather than knowingly. Consequently, the Montana Complaint, even if admitted into evidence, does not prove Taub's fraud claim.

Further, I decline to infer fraudulent intent from the allegations in the Montana Complaint. First, proof that a debtor failed to perform his contract is not evidence that he never intended to perform. *See Soper v. Simmons Int'l, Ltd.,* 632 F.Supp. 244, 249 (S.D.N.Y.1986); *In re Alicea,* 230 B.R. at 501. Second, although a court may infer fraudulent intent from objective circumstantial evidence of what the reasonably prudent person might have known, it need not do so. *Citibank (S.Dakota) N.A. v. Michel,* 220 B.R. at 606; *accord First National Bank of Red Bud v. Kimzey (In re Kimzey),* 761 F.2d 421, 424 (7th Cir.1985). The allegations in the Montana Complaint describe a commercial venture, and none of the pleaded

facts suggests that Morris intended to defraud Liberty. To the contrary, the Montana Complaint alleged that Morris (and Schrader) used part of the $65,000.00 advance to purchase casing tongs. (¶ 10.) Liberty did not challenge that use, and I assume that the purchase was one of the reasons given for borrowing the money. In addition, the Montana Complaint does not imply that Morris never intended to perform the well plugging contract with ANR Production Company or deliver the extracted equipment to Liberty in satisfaction of the parties' agreement.

**C. Attorney's Fees**

Having prevailed, Morris requests an award of attorney's fees. Section 523(d) authorizes the court to award costs and attorney's fees to the debtor if (i) the creditor requests a determination of the dischargeability of a consumer debt under § 523(a)(2), (ii) the debt is discharged and (iii) the position of the creditor was not substantially justified. A consumer debt is one incurred primarily for personal, family or household purposes. 11 U.S.C. § 101(8).

I am sympathetic to Morris' plea. He has been forced to incur legal fees unnecessarily, fending off unfounded motions, and ultimately, an ill-conceived collateral estoppel theory. Nonetheless, the statute he cites does not help him. Section 523(d) only applies to dischargeability litigation involving consumer debts, and Morris' debt to Taub does not meet the statutory definition. Accordingly, Morris' request must be denied.

**CONCLUSION**

Taub's motion to vacate the judgment is denied. Morris' request for an award of attorney's fees is also denied. It is so ordered.

---

10. The Montana Complaint, at ¶ 23, alleges that the representations were made for the purpose of "fraudulently inducing" Liberty into taking certain actions.